Linda E. DAUSCH, Plaintiff–Appellant,

v.

Reverend Greg RYKSE, Knox Presbyterian Church, Chicago Presbytery, also known as Presbytery of Chicago, et al., Defendants–Appellees.

No. 93–1459.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1993.

Steven K. Jambois, Mary L. Chirillo (argued), Kralovec, Jambois & Schwartz, Chicago, IL, for Linda E. Dausch.

Barry G. Bollinger, Craig G. Stifler, Kelly Ann Giampa (argued), Bollinger, Ruberry & Garvey, Chicago, IL, for Greg Rykse.

David G. Mountcastle, Mountcastle, Kelly & Dyer, Wheaton, IL, for Knox Presbyterian Church defendant-appellee.

Kathleen Mulligan (argued), James W. Teevans, Gardner, Carton & Douglas, Chicago, IL, for Chicago Presbytery.

Before GIBSON *, COFFEY and RIPPLE, Circuit Judges.

PER CURIAM.

Linda E. Dausch, a member of the congregation of the Knox Presbyterian Church ("Knox Church"), sought counseling from her church's pastor, Reverend Greg Rykse. She alleged in her complaint that it was one of the duties of Rykse and of the Knox Church and the Chicago Presbytery ("the church defendants") to provide psychological counseling to members of the congregation. However, according to Mrs. Dausch's complaint, Rykse "engaged in dangerous and improper counseling relations with plaintiff," which included "engaging in sexual contact during the course of psychotherapy with the plaintiff, an emotionally dependent patient."

The case before us, brought under diversity jurisdiction [1] and controlled by Illinois law, is an appeal from the dismissal of Mrs. Dausch's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Against the individual defendant Rykse, the complaint sets forth claims for professional negligence (Count I), breach of fiduciary duty (Count III), negligent infliction of emotional distress (Count V), and violation of the Sexual Exploitation of Psychotherapy Act, 740 ILCS 140/1 *et seq.* (Count IX). Knox Church and Chicago Presbytery were also charged with professional negligence (Count II), breach of fiduciary duty (Count VI), and negligent infliction of emotional distress (Count VIII).[2]

1.

Because our review of this case is limited to the sufficiency of Mrs. Dausch's complaint, we must accept all well-pled facts as true and must draw all reasonable inferences in favor of the appellant Mrs. Dausch. *Dowlatshahi v. Motorola, Inc.*, 970 F.2d 289, 290 (7th Cir.1992).

Applying this standard, the complaint presented these facts: [3] During the period be-

---

* The Honorable Floyd R. Gibson, of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. The initial jurisdictional statement indicated that the requirement of complete diversity of citizenship may be lacking. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). However, pursuant to the order of this court, Mrs. Dausch filed an affidavit showing that complete diversity of citizenship exists. At the time the complaint was filed, Mrs. Dausch was a citizen of Pennsylvania; Rev. Ryske was a citizen of Illinois; the Knox Presbyterian Church and the Chicago Presbytery were citizens of Illinois with their principal places of business in Illinois. The Presbyterian Church (U.S.A.) is no longer a party to this action. On motion of the appellant Linda Dausch, the Presbyterian Church (U.S.A.) was dismissed from this appeal without prejudice by order of this court on August 13, 1993. Both complaints allege that the amount in controversy exceeds $50,000.

2. Mrs. Dausch's first amended complaint, filed August 6, 1992, is misnumbered and therefore does not include Counts IV or VII. All references to the "complaint" before this court are to this first amended version found at R.33.

3. In her memorandum in response to the motions to dismiss, Mrs. Dausch explained further the basis for the complaint. The district court referred to this document extensively in its memorandum order. As we have noted in the text, in determining whether a complaint ought to be

dismissed, the district court considers the allegations that are contained in it and all reasonable inferences drawn from it in favor of the nonmovant. The facts asserted in the memorandum in opposition to the motion to dismiss, but not contained in the complaint, are relevant to the extent that they "could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 964 (7th Cir.1992). Because a plaintiff may point to "facts consistent with the existing language of the complaint to establish entitlement to prevail," *American Inter–Fidelity Exch. v. American Re–Insurance Co.*, 17 F.3d 1018, 1022 (7th Cir.1994), we set forth, for the sake of completeness, the factual allegations made in the memorandum in opposition.

According to the memorandum, a coordinator at Knox Presbyterian Church called Mrs. Dausch to inquire why she was not attending church, and recommended that she seek counseling from Rev. Greg Rykse, one of the pastors at the church. According to the complaint, Rykse contacted her soon thereafter and offered his services as a psychological counselor. Dausch stated that Rykse told her that she needed secular psychological, not religious, counseling, and that he was qualified to provide it. According to Dausch, Rykse stated that such treatment was included in his job description at Knox Presbyterian Church. Dausch attended counseling sessions with Rykse at his office in the church from January 1988 until May 1990. Over time Rykse increased the frequency and length of the ses-

tween January 1988 and June 1990, Rykse held himself out, and was held out by the church defendants, to be a duly qualified person engaged in providing psychological counseling to members of his congregation. Complaint ¶ 12, R.33 at 5. Such counseling was "in furtherance of the business and purpose" of the church defendants, and was within the scope of his employment. *Id.* Linda Dausch sought psychological counseling from Rykse between January 1988 and June 1990 in order to assist her in coping with certain emotional conditions she was experiencing, particularly depression. ¶¶ 14–15, R.33 at 5–6. Rev. Rykse accepted her for professional psychological treatment. ¶ 16, R.33 at 6. Operating within the framework of this counseling relationship, Rykse "compelled, encouraged, fostered and engaged in dangerous and improper counseling relations with plaintiff." ¶ 17, R.33 at 6–7. The relations included sexual contact during the course of the psychotherapy. ¶ 51, R.33 at 19. The church defendants knew or should have known of these improper counseling relations. ¶ 18, R.33 at 7.

### 2.

On February 9, 1993, the district court granted the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). Mem.Op. at 17.

The court turned first to Mrs. Dausch's allegations of professional negligence against the church defendants. In the court's view, these allegations were most accurately characterized as a claim for clergy malpractice. The court held that such a cause of action was not recognized in Illinois and therefore could not be the basis for holding the church defendants vicariously liable. It also determined, in the alternative, that, even if such a cause of action existed, the church defendants could not be held vicariously liable for

actions done by Rykse solely for his own benefit and not as part of his ministerial duties. Nor, according to the district court, could the church defendants be held liable for failing to exercise reasonable care over Rykse when acting outside the scope of his employment because there was no allegation that the church defendants knew or should have known of Rykse's improper relations or of the need to exercise control over him. Under such circumstances, the fact that Rykse was the church defendants' employee was not a sufficient basis for vicarious liability.

The district court next addressed the professional negligence allegation against Rykse. The court reiterated that Illinois does not recognize a cause of action for clergy malpractice. It noted that courts that have considered but rejected such a claim have recognized the free exercise implications of any such recognition. The district court also recognized, however, that such free exercise considerations would not be relevant if Rykse's conduct was not part of the belief and practices of his church. Repeating its earlier view with respect to the church defendants, the district court concluded that Mrs. Dausch had failed to allege adequately that Rykse's psychological counseling was not part of the church's religious beliefs and practices. As a result, concluded the court, the free exercise clause of the First Amendment was implicated and Mrs. Dausch failed to state a valid claim.

The district court next turned to the allegations that the defendants had breached a fiduciary duty to Mrs. Dausch. At the outset, the district court concluded that, even though the church defendants might be characterized as her "spiritual and religious advisors," Mem.Op. at 14, that relationship was not, under the law of Illinois, that of a fiduciary. With respect to Rykse, the court concluded that he did not have a fiduciary duty,

---

sions. Mrs. Dausch claimed that he told her that "religion does not apply here. Your problems are so deep you need more psychological treatment from me." She stated that she became very involved in the therapy and attached to Rykse. Rykse allegedly represented to her that he was a capable, trained professional on whom she could rely to assist her with her personal

problems. However, on June 14, 1988, Rykse allegedly gave Mrs. Dausch an ultimatum: "I have been giving to you, and I need something back for my services. You must give back to me or I will not work with you anymore." From that date through May 1990 Mrs. Dausch's therapy sessions began with sexual relations with Rykse.

but rather a general duty to refrain from violating the law. More fundamentally, the court determined that the allegation of a fiduciary duty was simply an elliptical way to state a clergy malpractice claim, a cause of action that it had already held to be not recognized in Illinois.

The district court dismissed, on the same rationale, Mrs. Dausch's allegations of negligent infliction of emotional distress. Because Illinois does not recognize clergy malpractice claims, it would also not recognize claims for negligent infliction of emotional distress in these circumstances. Finally, the court dismissed Mrs. Dausch's counts concerning the church defendants' negligent hiring, training, and supervision of Rykse because adjudication of such claims would foster excessive state entanglement with religion.

For the reasons that follow, we affirm the district court's dismissal of counts against the church defendants, Counts II, VI, and VIII. Concerning the counts against Rykse, we affirm the district court's dismissal of Count III, breach of fiduciary duty. We also affirm the dismissal of Count V, alleging negligent infliction of emotional distress against Rykse; because there was no assignment of error, this count is not properly before the court. We reverse the dismissal of the remaining counts, Counts I and IX, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART

COFFEY, Circuit Judge, concurring.

 I agree with Section A.1. (Professional Negligence and Negligent Infliction of Emotional Harm—Defendant Ryske) subsections a. and b. and Section B. (Sexual Exploitation in Psychotherapy Act) of Judge Ripple's opinion, but wish to make it clear that this is in no way to be interpreted as expanding the liability of the clergy and thus spiritual counseling, or some combination of spiritual and secular counseling, remains shielded by the First Amendment. Thus Dausch's claims for professional negligence (Count I) and violation of the Illinois psychotherapy statute (Count IX) are the only claims

against Rev. Ryske that survive on remand. This position is also consistent with Section C. (Breach of Fiduciary Duty) of Judge Ripple's concurrence which affirms the dismissal of Dausch's breach of fiduciary duty claim against Rev. Ryske (Count III), but it is at odds with Section A.1. (Professional Negligence and Negligent Infliction of Emotional Harm—Defendant Ryske) subsection c. of Judge Ripple's analysis as it unfortunately combines the reversal of the trial judge's dismissal of Dausch's professional negligence claim with the reversal of the trial judge's dismissal of her claim for negligent infliction of emotional distress (Count V). I also wish to point out that Dausch's brief on appeal fails to assign error to the court's dismissal of that claim, thus it is not before the court. Further, Dausch's complaint in my opinion fails to allege facts sufficient to state a cause of action against the church defendants sounding in professional negligence (Count II), breach of fiduciary duty (Count VI), and negligent infliction of emotional distress (Count VIII). I agree with the trial court's action and Section C. (Breach of Fiduciary Duty) of Judge Ripple's analysis, affirming the dismissal of Dausch's breach of fiduciary duty claim. However, I disagree with Section A.2 (Professional Negligence and Negligent Infliction of Emotional Harm—Church defendants) of Judge Ripple's analysis for Dausch's complaint fails to adequately allege that the church defendants knew or should have known of the improper counselling conduct of Rev. Ryske. I further note that Dausch's complaint fails to allege any basis for a claim under the doctrine of *respondeat superior* because her complaint fails to state that the church defendants ever hired or authorized Rev. Ryske to engage in secular psychological counselling. Rev. Ryske's sexual contact with Dausch was obviously a deviation from the terms of the contract of his employment with the church and was certainly not in furtherance of the church defendants' business. Finally, Dausch's complaint fails to allege that the church defendants incurred any supervisory liability for it is devoid of any allegation that the church defendants were aware or had any knowledge that Rev. Ryske made improper sexual ad-

vances either before or during the time in question.

RIPPLE, Circuit Judge, concurring in part and dissenting in part in the judgment.

This case was dismissed by the district court because, in its view, the complaint failed to state a claim upon which relief could be granted. This procedural posture is central to the adjudication of this present appeal. Accordingly, I set forth, at the beginning of the analysis, a discussion of the settled principles of law that must guide the inquiry when a case is presented in this procedural posture.

Review of the district court's grant of a motion to dismiss the amended complaint is de novo. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 775 (7th Cir.1994); *Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 920 (7th Cir.1992). All the facts alleged in the complaint, plus any reasonable inferences from those facts, are viewed in the light most favorable to the nonmovant Mrs. Dausch. *Vicom,* 20 F.3d at 775; *Dowlatshahi v. Motorola, Inc.,* 970 F.2d 289, 290 (7th Cir.1992). Complaints are to be read liberally, as required by the notice pleading theory underlying the Federal Rules of Civil Procedure. *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The district court, viewing all facts in a light most favorable to the non-moving party, may grant the motion only if "it is beyond doubt that the nonmovant can plead no facts that would support his claim for relief." *Id.* at 45–46, 78 S.Ct. at 102. Rule 8 of the Federal Rules of Civil Procedure requires clarity but not detail:

> Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(e)(1) states that "[e]ach averment of

a pleading be simple, concise and direct." The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint " 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.' "

*Vicom,* 20 F.3d at 775 (citations omitted). Thus, although the complainant must show that she is entitled to relief, she need not set out in detail the facts upon which her claim is based. *Redfield v. Continental Cas. Corp.,* 818 F.2d 596, 605 (7th Cir.1987). Nevertheless, despite Rule 8(a)'s allowance that the complaint's statement of the claim be "short and plain," a plaintiff may not "fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint." *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993). With these principles in mind, I now examine the sufficiency of the complaint.

A. *Professional Negligence and Negligent Infliction of Emotional Harm*

1. Defendant Rykse

a.

Central to the district court's disposition of this case was its determination that, with respect to the individual defendant Rykse, the complaint alleged a claim for clergy malpractice rather than a claim for professional negligence on the part of a psychological counselor.[1] I therefore turn first to this allegation.

The first count of the complaint alleges that Rykse had a "duty to possess and apply the skill and knowledge of a reasonably well qualified person providing psychological counseling," and that he was professionally negligent in counseling plaintiff.[2] In the dis-

---

1. Although the district court first addressed the claims against the church defendants, its disposition of those claims anticipated its decision that the claims against the individual defendant were claims for clergy malpractice and not for professionally negligent psychological counseling.

2. Dausch's specific allegations of Rykse's professional negligence include the following: (1) he failed to establish and maintain an appropriate counseling milieu; (2) he engaged in improper relations with plaintiff under the auspices of the

counselor-counselee relationship; (3) he failed to refer her to a separate counselor when he knew or should have known that his emotional involvement with plaintiff jeopardized and harmed her well-being; (4) he failed to seek the supervision of his superiors when he knew or should have known that his emotional involvement with plaintiff jeopardized and harmed her well-being; (5) he failed to terminate the counseling relationship with plaintiff when he knew or should have known that his emotional involvement with her jeopardized and harmed her well-being; (6) he

trict court's view, Mrs. Dausch's allegations failed to raise a claim for malpractice by a psychological counselor because Mrs. Dausch did not allege specifically that Rykse was independently trained as a psychological counselor, that Rykse did not receive his counseling training through his church or affiliated institution, that the counseling was not conducted as part of Rykse's employment with the church, or that the sessions were not conducted at the church. In the district court's view, although allegations that Mrs. Dausch obtained counseling from Rykse independent of his role as her clergyman would have been consistent with a claim for malpractice of a psychological counselor, here she had alleged that "it was within the scope of the Rev. Greg Rykse's employment to offer psychological counseling to members of the Knox Church congregation." Complaint ¶ 12, R.33 at 5. Without adequate allegation that Rykse's counseling was purely secular, the district court concluded that Mrs. Dausch's claim was therefore for clergy malpractice, a cause of action not recognized in Illinois.

On appeal, Mrs. Dausch maintains that her claims are based on psychotherapy malpractice, which is recognized in Illinois, see *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991), and not on clergy malpractice, which she never alleged. The defendant in *Corgan* was an unregistered psychologist who was held to the same standard of care as if he were a psychologist. Mrs. Dausch asserts that Rykse should also be held to that standard. According to Mrs. Dausch, Rykse held himself out as qualified to perform *secular* psychological counseling and the church supported his counseling endeavors. Therefore, she maintains, he should be required to exercise the skill normally possessed by members of that profession, regardless of his actual qualifications. She submits that she has offered sufficiently well-pleaded facts to establish a valid claim for psychotherapy malpractice. Her allegation that the service that Rykse offered to provide was secular psychological counseling must be taken as true at the pleading stage; only at a later stage of the proceeding will it be her obligation to substantiate the allegation by the sort of factual proof that the district court required in disposing of this motion for judgment on the pleading. She insists the court erred by characterizing her claim as one for clergy malpractice, thereby allowing the individual defendant and the church to escape liability for his wrongdoing.

In reply, Rykse argues that it is undisputed that at least part of Rykse's interaction with Mrs. Dausch consisted of religious counseling. Because the foundation of their relationship was as member and pastor of the church, the district court properly determined, in Rykse's view, that Mrs. Dausch "failed to adequately allege that Rykse's counseling was purely secular." Mem.Op. at 12. Rykse submits that Mrs. Dausch sought pastoral counseling for depression from Rykse, her pastor, rather than through the services of a psychotherapist, presumably because she expected counseling that would be spiritual in nature. Like the plaintiff in *Schmidt v. Bishop*, 779 F.Supp. 321 (S.D.N.Y.1991),[3] states Rykse, Mrs. Dausch

failed to diagnose or properly control plaintiff's symptoms of transference; and (7) he failed to act in a manner appropriate within the ambit of his pastoral obligations. Complaint ¶ 21, R.33 at 7–8.

**3.** The district court in this case follows closely the analysis and decision in *Schmidt*, a New York case applying New York law. *Schmidt* analyzed a long-term relationship between a girl and a Presbyterian pastor, beginning when her parents brought the girl, at age twelve, to the minister for "emotional, *spiritual* and familial counseling." *Schmidt*, 779 F.Supp. at 324 (emphasis added). The court found that the action should have been a battery or intentional tort (but the statute of limitations had run). It rejected plaintiff's attempt to treat an intentional tort as a negligence

claim, and found that the real issue was clergy malpractice. Once it stated that counseling was part of the religious duties of clergy, it then refused to attempt to establish a standard of reasonable care for pastoral counselors on the ground that the state must not "foster excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 614–15, 91 S.Ct. 2105, 2112, 29 L.Ed.2d 745 (1971).

It may be argued that it requires no excessive entanglement with religion to decide that reasonably prudent clergy of any sect do not molest children. The difficulty is that this Court, and the New York courts whose authority we exercise here, must consider not only this case, but the next case to follow, and the ones after that, before we embrace the newly

deliberately avoided asserting clergy malpractice but was in fact making such a claim. Rykse asserts that the alleged negligent actions arose within the confines of a clergyman/parishioner relationship.

b.

I begin my analysis of this issue by noting my complete agreement with our colleague in the district court with respect to the viability of a claim for clergy malpractice. This cause of action has been soundly rejected by the courts of Illinois. In *Baumgartner v. First Church of Christ, Scientist,* 141 Ill. App.3d 898, 96 Ill.Dec. 114, 490 N.E.2d 1319 *appeal denied,* (Ill.), *cert. denied,* 479 U.S. 915, 107 S.Ct. 317, 93 L.Ed.2d 290 (1986), the Illinois Appellate Court determined that an action for clergy malpractice could not be maintained because it was not a "justiciable controversy," *id.* 141 Ill.App.3d at 904, 96 Ill.Dec. at 120, 490 N.E.2d at 1325, and because the evaluation of such a complaint "would require the court to extensively investigate and evaluate religious tenets and doctrines," *id.* at 903, 96 Ill.Dec. at 119, 490 N.E.2d at 1324. Moreover, the Illinois legislature explicitly excluded liability for "counseling of the spiritual or religious nature" in the Sexual Exploitation in Psychotherapy Act, 740 ILCS 140/1.

Indeed, a cause of action for clergy malpractice has been rejected uniformly by the states that have considered it.[4] As the Illinois court pointed out in *Baumgartner,* this unanimity is based on the difficulty that would be encountered in evaluating such a claim without entangling the civil courts in

extensive investigation and evaluation of religious tenets. *Cf. Thomas v. Review Bd.,* 450 U.S. 707, 716, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981) (noting that "it is not within the judicial function and judicial competence" to determine whether the adherent of a particular faith has properly interpreted the tenets of that faith); *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 724–25, 96 S.Ct. 2372, 2387–88, 49 L.Ed.2d 151 (1976) (holding that the court improperly inquired into the propriety of the removal of a bishop and the reorganization of the church).

This judicial refusal to examine the pastoral activity of members of the clergy, when such a judicial inquiry would require examination and evaluation of the clergy's adherence to the tenets of his or her faith or of internal decisions and organization of the church, has not been extended to situations in which the conduct in question does not bear such a direct relationship to the doctrinal or organizational aspects of religious practice. *Cf. Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to a reasonable state regulation ... if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief."). Such activity can be proscribed by a legitimate regulation of general applicability designed to protect the health, safety or good morals of the community. *See Baumgartner,*

invented tort of clergy malpractice. This places us clearly on the slippery slope and is an unnecessary venture, since existing laws against battery, and the criminal statute against sexual abuse if timely invoked, provide adequate protection for society's interests. Where could we stop?

*Schmidt,* 779 F.Supp. at 328.

4. The following state supreme courts have held that there is no cause of action for clergy malpractice: *Handley v. Richards,* 518 So.2d 682 (Ala.1987); *Moses v. Diocese,* 863 P.2d 310 (Colo. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988); *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991); *Strock v. Pressnell,* 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988); *Schieffer v. Catholic Archdiocese,* 244 Neb. 715,

508 N.W.2d 907 (1993). Two other state supreme courts have defeated clergy malpractice actions on other grounds without determining the propriety of causes of action for clergy malpractice: *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338 (Mo.1993), and *Bladen v. First Presbyterian Church,* 857 P.2d 789 (Okla.1993). Other state courts refusing to recognize clergy malpractice claims include *Nally v. Grace Community Church of the Valley,* 240 Cal.Rptr. 215 (Cal. App.1987), *rev'd on other grounds,* 47 Cal.3d 278, 253 Cal.Rptr. 97, 763 P.2d 948 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Fontaine v. Roman Catholic Church,* 625 So.2d 548 (La.Ct.App.1993); *Jones by Jones v. Trane,* 153 Misc.2d 822, 591 N.Y.S.2d 927 (Sup.Ct.1992); and *E.J.M. v. Archdiocese,* 424 Pa.Super. 449, 622 A.2d 1388 (1993).

96 Ill.Dec. at 120, 490 N.E.2d at 1325; *cf. Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 876–82, 110 S.Ct. 1595, 1598–1602, 108 L.Ed.2d 876 (1990) (reviewing Supreme Court precedent interpreting the Free Exercise Clause). As the Illinois court pointed out in *Baumgartner*, despite its nonrecognition of clergy malpractice claims, Illinois allows judicial scrutiny in this latter type of conduct because it does not implicate judicial assessment of the tenets of a particular religion or a determination of whether a particular litigant has adhered to those tenets. 96 Ill.Dec. at 120, 490 N.E.2d at 1325. Rather, the sole inquiry is whether the individual has engaged in conduct that the state has deemed harmful. Indeed, a great deal of the activity of religious institutions falls within this category. Although such activity is motivated by the tenets of the religion, evaluation of that activity does not require that those religious tenets be assessed by the civil courts. For instance, many religions maintain hospitals and schools. The motivation for maintaining those institutions is clearly rooted in the faith commitment of the sponsoring church. However, whether a school adheres to safety standards or a hospital to medically acceptable standards of care hardly requires that the court examine and adjudicate matters of religious doctrine. Indeed, today, religious groups offer their adherents, and sometimes the entire community, services that were not offered by ecclesiastical sources in the past. Few would doubt, however, that a lawyer practicing in a legal clinic operated by a church or a physician practicing in a clinic under church auspices would have to comply with the same standards of professional care and responsibility as any other law firm or medical facility.

 Characterizing psychological counseling services in terms of this distinction between pastoral work, which can be assessed only by reference to theological beliefs, and the provision of secular services, which can be assessed independently of such religious considerations, presents a particularly difficult issue. In most, if not all, religious traditions, pastoral counseling—advice on matters of spiritual growth or moral responsibility—requires a great deal of knowledge and skill with respect to human psychology. Yet, as Illinois and, indeed, every state that has confronted the issue have noted, such pastoral counseling is clearly and directly centered on matters of religion, and claims of negligence are not cognizable in the civil courts. Indeed, an intermediate appellate court in Illinois has rejected the argument that

> the duties of a priest to his parishioner or of a minister to his congregation should be equated with the duties of a psychologist to his patient. A priest or minister is not required to possess and apply the knowledge and use the skill and care ordinarily used by a reasonably well-qualified psychologist.

*Hertel v. Sullivan*, 261 Ill.App.3d 156, 198 Ill.Dec. 574, 577, 633 N.E.2d 36, 39 (1994). On the other hand, it is entirely possible that, in an age when many ecclesiastical organizations have assumed the task of providing a variety of medical and social services, a particular church might also offer purely secular counseling as a service to the members of its congregation or to a broader segment of the population in need of such services. If a church were to undertake such a project, *Baumgartner* suggests rather firmly that those who provided such professional services on behalf of the church would indeed be subject to the same legal strictures as those imposed upon individuals who undertake to provide such services in another setting. *Baumgartner*, 96 Ill.Dec. at 120, 490 N.E.2d at 1325. Therefore, if a complaint alleges that the psychological services that were provided were "secular" in nature, or that the provider held himself out to be providing the services of a psychological counselor, the negligence claim cannot be characterized as one for clergy malpractice. Tort claims for behavior by a cleric that does not require the examination of religious doctrine are cognizable. *See Schmidt*, 779 F.Supp. at 327 (offering negligent operation of church van as example of tort claim unrelated to religious effort of a cleric). *See generally Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940) (stating First Amendment's protection of freedom to act "remains subject to regulation for the protec-

tion of society"). Under these circumstances, the claim is for professional malpractice by a psychological counselor, not clergy malpractice.

If the complaint can be appropriately characterized as stating a claim for professional malpractice as opposed to clergy malpractice, "professionals" may be held to "an elevated and objective standard of care." *Eaves v. Hyster Co.*, 244 Ill.App.3d 260, 185 Ill.Dec. 80, 84, 614 N.E.2d 214, 218 (1993). Illinois's Pattern Jury Instructions for use in "professional negligence" cases require professionals to apply the same degree of knowledge, skill, and ability as an ordinarily careful professional would exercise under similar circumstances. *Id.* 185 Ill.Dec. at 83, 614 N.E.2d at 217. "The elements of a malpractice action are the same elements required of any negligence action." *St. Paul Fire & Marine Ins. Co. v. Downs*, 247 Ill.App.3d 382, 187 Ill.Dec. 130, 137, 617 N.E.2d 338, 345 (1993).

In *Corgan v. Muehling*, 143 Ill.2d 296, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991), the Supreme Court of Illinois reviewed a complaint very similar to the one before this court, and determined "that the plaintiff can allege a cause of action for negligent infliction of emotional distress as a direct victim of defendant's psychological malpractice." *Id.* 158 Ill.Dec. at 494, 574 N.E.2d at 607. The *Corgan* defendant had held himself out as a registered psychologist and had engaged in sexual relations with the plaintiff "under the guise of therapy." *Id.* 158 Ill.Dec. at 490, 574 N.E.2d at 603. Discussing the duty of a therapist, the state supreme court cited with

approval the decisions of *Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985) (holding that allegations of a social worker's mishandling of the transference phenomenon[5] were sufficient to show a breach of a duty of care) and *Omer v. Edgren*, 38 Wash.App. 376, 685 P.2d 635 (1984) (holding that sexual involvement between a psychotherapist and patient raises a jury question concerning malpractice). *Id.* 685 P.2d at 636–37. The court also noted the legislature's recognition of such a duty in the Sexual Exploitation in Psychotherapy Act. It finally concluded that a plaintiff need not allege physical symptoms of emotional distress in the complaint. *Id.* 685 P.2d at 638.

c.

Upon examining the complaint in the case before us, I conclude that some of Mrs. Dausch's allegations must be permitted to survive a motion for judgment on the pleading. The complaint sufficiently alleges a cause of action against Rykse as a counselor, not pastor, in Counts I (professional negligence) and V (negligent infliction of emotional distress).[6] In these counts, Mrs. Dausch maintains that the defendants rendered a psychological counseling service that was completely different from pastoral counseling. She submits that her complaint, fairly read, sets forth a claim that Rykse undertook to provide psychological counseling of a nature different from pastoral counseling and that, with respect to that undertaking, he can be held to the standards required by the civil

---

**5.** The Illinois appellate court explained transference thus:

> The "transference phenomenon" ... has been defined in psychiatric practice as "a phenomenon * * * by which the patient transfers feelings towards everyone else to the doctor, who then must react with a proper response, the counter transference, in order to avoid emotional involvement and assist the patient in overcoming problems." The mishandling of this phenomenon, which generally results in sexual relations or involvement between the psychiatrist or therapist and the patient, has uniformly been considered as malpractice or gross negligence in other jurisdictions, whether the sexual relations were prescribed by the doctor as part of the therapy, or occurred outside the scope of treatment.

*Horak*, 85 Ill.Dec. at 604, 474 N.E.2d at 18 (citations omitted); *see also Simmons v. United States*, 805 F.2d 1363, 1364–66 (9th Cir.1986).

**6.** Even though in her appellate brief the plaintiff focuses on the professional malpractice claim when arguing that Ryske's actions ought not be characterized as clergy malpractice, it is clear that the same arguments apply to the negligent infliction of emotional distress claim. The district court treated the latter claim in this manner and, under these circumstances, it would exalt form over substance to expect the plaintiff to repeat the same argument twice here. While a reviewing court should not reach arguments that are not made in the appellate brief, it ought to use a rule of reason and not of hypertechnicality in applying the rule to the litigants before it.

law of all who undertake this delicate and sophisticated task.

The district court was of the view that the complaint did not adequately allege that the undertaking of Rykse was a purely secular one. As noted earlier, the district court placed great weight on the failure of Mrs. Dausch to allege that the counseling was not part of Rykse's employment with the church, that the sessions were not conducted off the premises of the church, and that Rykse did not receive training as a psychological counselor from a source other than the church. I agree with our colleague in the district court that these factors are indeed relevant to a determination of the nature of the counseling. I cannot accept, however, the proposition that the omission of these assertions from the complaint is fatal to the plaintiff's case. Indeed, the district court appears to have been of the view that, unless all of these factors were resolved in favor of the plaintiff, it would be necessary to characterize this action as one for clergy malpractice. Such a requirement is not realistic. A cleric does not immunize his or her actions simply because they are performed on the grounds of the church. A legal clinic on church grounds would, for instance, clearly be subject to state regulation. The source of the clergy's training is also not outcome-determinative. A church certainly can decide to maintain a fully accredited educational institution for the education of its clergy in secular pursuits.

Given the standards that govern the adequacy of a complaint, I believe it was sufficient for Mrs. Dausch to allege that Rykse held himself out as a trained psychological counselor and that he undertook, as a function apart from pastoral counseling, to provide such a professional service that did not implicate in its rendition the beliefs or practices of the Presbyterian faith. Mrs. Dausch wants the court to examine her allegation that Rykse held himself out as a trained and qualified psychological counselor and then used that representation to have sexual relations with her. Neither Illinois law nor the Free Exercise Clause relieves an individual of the obligation to comply with neutral laws of general applicability, *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 879, 110 S.Ct. 1595, 1600, 108 L.Ed.2d 876 (1990), and does not shield clergy from all liability for their wrongs. It is of course appropriate for a district court to be demanding of the plaintiff's efforts to establish the factual allegations of a complaint such as this one at a later stage of the litigation. However, I believe that it is premature to dismiss this case at the pleading stage on the ground that it fails to state a cause of action.

### 2. Church defendants

The district court dismissed the professional negligence claim against the churches primarily on the basis that neither the courts nor the legislature had recognized a cause of action for clergy malpractice.[7] It further held that, even if such a cause existed, Mrs. Dausch had failed to state a valid claim against the churches. The district court first pointed out that the church defendants could not be held vicariously liable for Rykse's actions because the alleged sexual acts had to be deemed done solely for his own benefit

---

7. Mrs. Dausch alleged that the church defendants were professionally negligent because they: (1) failed to establish and maintain an appropriate counseling milieu; (2) engaged in improper relations with plaintiff under the auspices of the counselor-counselee relationship; (3) failed to refer plaintiff to a separate counselor when they knew or should have known that Rykse's emotional involvement with plaintiff jeopardized her well-being; (4) failed to terminate the counseling relationship with plaintiff when they knew or should have known that Rykse's emotional involvement with plaintiff jeopardized and harmed plaintiff's well-being; (5) failed to diagnose or properly control plaintiff's symptoms of transference; (6) failed to act in a manner appropriate within the ambit of pastoral obligations; (7) failed to adequately supervise its counseling personnel; (8) failed to employ personnel with the skill, knowledge, and expertise which would have been exercised by a reasonably well-qualified person providing counseling to members of a congregation; (9) failed to adequately train its personnel who engage in counseling; (10) failed to adequately monitor counseling techniques and counseling results of its personnel; and (11) failed to clearly and adequately communicate policies regarding emotional involvement between counselors and counselees to counselors, employees or agents. Complaint ¶ 25, at 9–10. Identical allegations were made in that count of the complaint that alleged that the church defendants had engaged in the negligent infliction of emotional harm.

and not as part of his ministerial duties. Mem.Op. at 9. The district court was correct in its conclusion that sexual misconduct by a member of the clergy is, by the weight of authority, beyond the scope of employment of the cleric. Here, however, the complaint alleges that Rykse had held himself out as rendering not a pastoral service but a secular psychological counseling service. In this circumstance as well, Illinois generally has held that sexual activity of an employee is insufficient to state a cause of action under the law of respondeat superior. *See Hoover v. University of Chicago Hosps.*, 51 Ill.App.3d 263, 9 Ill.Dec. 414, 417–18, 366 N.E.2d 925, 928–29 (1977) (stating that an employee physician who sexually assaulted a patient could not be found to be acting within the scope of his employment). Nevertheless, the Illinois courts have recognized that the mishandling of the transference phenomenon in psychological counseling does give rise to an action in negligence. *Corgan*, 158 Ill.Dec. at 489, 574 N.E.2d at 602; *see also Horak v. Biris*, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 603, 474 N.E.2d 13, 17 (1985). More recently, an Illinois court has suggested strongly that such negligence must be considered within the scope of employment. *St. Paul Fire & Marine Ins. Co. v. Downs*, 247 Ill.App.3d 382, 187 Ill.Dec. 130, 136, 617 N.E.2d 338, 344 (1993). Mrs. Dausch does allege, in paragraphs 21(f), 25(f), 32(f), 38(e), 42(f), and 46(e), that Rykse "failed to diagnose or properly control plaintiff's symptom's [sic] of transference."

The district court next held that the church defendants were not obligated to exercise reasonable care over Rykse when he was acting outside the scope of his employment. In this regard, the district court followed the general rules of master-servant tort liability found in the Restatement (Second) of Torts at § 317. It held that the complaint lacked the allegation that the church defendants knew or should have known that it should exercise control over Rykse. More precisely, continued the district court, the complaint failed to allege that: (1) the church defendants knew or should have known of the necessity and opportunity to exercise control over Rykse; (2) there were any indications that Mrs. Dausch and Rykse were having sexual relations during the counseling sessions; and (3) Rykse was encouraging improper relations with her or other parishioners. The district court determined that, at best, the complaint alleged that vicarious liability was established because Rykse was the church defendants' employee and such an allegation was not sufficient. Mem.Op. at 11.

■ I respectfully disagree with the conclusion of the district court that the complaint fails to allege adequately that the church defendants knew or should have known of the allegedly improper counseling conduct of Rykse. In paragraph 18 of the complaint, Mrs. Dausch alleged that "[d]uring and prior to the period between January, 1988 and June 1990, the [church defendants] *knew or should have known that Rev. GREG RYKSE was compelling, encouraging, fostering and engaging in dangerous and improper counseling relations with Plaintiff.*" (emphasis added). Again, in paragraph 46, there are allegations that the defendant churches knew or should have known of the improper acts allegedly committed by Rykse during the counseling sessions. These allegations are sufficient to state that, with respect to the claimed secular activities of Rykse, the church defendants were negligent in permitting Rykse to engage in such activities. It is, of course, well established that a civil court cannot inquire into "matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law," without offending the Free Exercise Clause of the First Amendment. *Serbian E. Orthodox Diocese*, 426 U.S. at 713, 96 S.Ct. at 2382. As Judge Selya wrote for the First Circuit, this "principle is an important one, steeped in our tradition as well as in our jurisprudence." *Natal v. Christian & Missionary Alliance*, 878 F.2d 1575, 1577 (1st Cir.1989). As our colleagues in the Fifth Circuit have stated:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern.

*McClure v. Salvation Army,* 460 F.2d 553, 558–59 (5th Cir.), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972).[8] These values are not implicated, however, when the inquiry is limited, as it is here, to an examination of the church's decision to employ Rykse in a purely secular capacity and of its alleged failure to supervise his purely secular activities undertaken under its auspices. The necessary inquiry would be limited to an examination of the church defendants' employment of Rykse to perform the purely secular service of psychological counseling. It would not entail—nor could it entail—an inquiry into the decision of the church defendants to retain Rykse to perform services in any way religious in nature.

Indeed, this case, as it comes to us on the pleading,[9] presents a stark contrast to the situation before the Illinois court in *Baumgartner.* There, the court was asked to determine whether a Christian Science practitioner had rendered Christian Science healing. The Illinois court held that it could not measure the standard of care of that treatment under medical malpractice criteria. Nor would it interpret the religious doctrine of the Christian Science faith to decide whether defendants deviated from the standard of care of an ordinary Christian Science practitioner and nurse. *Baumgartner,* 96 Ill. Dec. at 118, 490 N.E.2d at 1323. By contrast, the case before us would not necessitate such an intrusive inquiry into religious matters. The wrongful conduct alleged can be analyzed without evaluating the tenets of the Presbyterian religion. It would not be necessary to inquire whether Rykse or the church defendants deviated from the standard of care of an ordinary Presbyterian.

### B. *Sexual Exploitation in Psychotherapy Act*

The same considerations that require the reinstatement of the counts alleging professional negligence and the negligent infliction of emotional harm require the reinstatement of Count IX alleging a violation of the Sexual

---

**8.** *See also Hutchison v. Thomas,* 789 F.2d 392, 396 (6th Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *Kaufmann v. Sheehan,* 707 F.2d 355, 358–59 (8th Cir.1983); *Simpson v. Wells Lamont Corp.,* 494 F.2d 490, 493 (5th Cir.1974); *Minker v. Baltimore Annual Conf. of United Methodist Church,* 699 F.Supp. 954, 955 (D.D.C.1988), *aff'd in part, remanded,* 894 F.2d 1354 (D.C.Cir.1990); *cf. Dowd v. Society of St. Columbans,* 861 F.2d 761, 764 (1st Cir.1988) (per curiam) (involving priest's "membership rights" claim against missionary society).

**9.** It is important to remember that this claim is not here on summary judgment. We must adjudicate the matter before us in the procedural posture in which it is presented and express no view on the appropriate disposition at some other stage of the litigation. As Chief Judge Posner has written in a similar context:

> This suit may in the end fail, but we think the district judge jumped the gun in dismissing it on the pleadings. The federal rules do not require a plaintiff to allege sufficient facts to establish his right to a judgment. All it requires, with certain exceptions enumerated in Rule 9, none of which is applicable to this case, is a "short and plain"—which is to say, nonlegalistic, nonjargonistic—statement of what his claim is.

*Trevino v. Union Pac. R.R.,* 916 F.2d 1230, 1234 (7th Cir.1990).

My brothers justify their votes to affirm the district court's dismissal of the counts against the church defendants on the ground that the pleadings do not allege with sufficient specificity that the church had permitted the individual defendant to engage in a secular pursuit under their aegis. My colleagues avoid mention of the fact that the allegations of the complaint with respect to the church defendants are no more vague than the allegations against the individual defendant that they permit to stand. Indeed, the district court did not determine that the complaint suffered from such an infirmity and, if the usual rules that govern our modern notice pleading are applied, such a result would not be permissible.

My colleagues' position can survive only if there are special rules of pleading for cases that involve ecclesiastical entities. In my view, such a rule cannot be justified on several grounds. First, although the Federal Rules of Civil Procedure do make exceptions to the usual pleading rules in the case of fraud, they make no such exceptions for cases dealing with church-related matters. As the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* — U.S. —, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), has made clear, we are not free to develop exceptions to what the Supreme Court and the Congress, acting under the Rules Enabling Act, have chosen to make. Second, absent a sufficiently important reason to do so, such a rule, if it did exist, would tread on thin ice with respect to the Establishment Clause of the First Amendment. It is basic Establishment Clause jurisprudence that the law cannot treat a church-related entity more favorably than it treats non-church-related entities that are similarly situated.

Exploitation in Psychotherapy Act. Section (e) excludes "*counseling of a spiritual or religious nature.*" 740 ILCS 140/1(e).[10] However, Mrs. Dausch's complaint on its face alleges that she was subjected to the abuse proscribed by the Act. At this stage of the litigation, it must be assumed that Rykse's counseling was secular. If the defendant was acting in a pastoral rather than a secular capacity, that defense can be raised by him and evaluated in due course.[11]

### C. *Breach of Fiduciary Duty*

I turn now to Mrs. Dausch's allegations that Rykse and the defendant churches breached a fiduciary obligation to her. At the outset, I note that, by contrast to the other counts of the complaint that I have already reviewed, these counts allege that the breach of fiduciary duty occurred in the context of a pastor-parishioner relationship. Mrs. Dausch claimed a special relationship existed between herself, as a member of the congregation of Knox church seeking counseling, and Rykse as its pastor and counselor; it also existed between herself and the church defendants, who were guiding and controlling Rykse.

The district court rejected plaintiff's claim that the defendants breached a fiduciary duty to her. Under Illinois law, for a fiduciary duty to exist, there must be "a special confidence reposed in one who, by reason of such confidence, must act in good faith and with due regard to the interests of the person reposing such confidence." *Estate of Osborn*, 128 Ill.App.3d 453, 83 Ill.Dec. 694, 697, 470 N.E.2d 1114, 1117 (1984). Relying upon *Osborn*, the district court found no such fiduciary relationship as a matter of law. Nor, in the view of the district court, did the allegations of the complaint set forth sufficient facts to allege the existence of such a relationship. The district court also was of

the view that alleging a breach of fiduciary obligation under these circumstances was simply an elliptical way of alleging clergy malpractice. Indeed, the court pointed out, because it would require the court to define the scope of a fiduciary duty owed persons by their clergy, a matter clearly rooted in the tenets and internal organization of a religion, it raises the same constitutional difficulties encountered when defining the standard of care under negligence.

 I believe that the decision of the district court is correct. At the outset, I note that Mrs. Dausch cited no Illinois authority establishing that Illinois recognizes such a fiduciary duty. As we have said on other occasions, federal courts sitting in diversity ought to be circumspect in expanding the law of a state beyond the boundaries established in the jurisprudence of the state. *See Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir.1987); *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1333 (7th Cir.1985). Moreover, given the constitutional difficulties that would be encountered if a cause of action for breach of fiduciary duty were permitted under these circumstances, we ought to be particularly cautious in assuming that Illinois has taken such a step. *Cf. NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 507, 99 S.Ct. 1313, 1322, 59 L.Ed.2d 533 (1979) (stating that, as a prudential matter, a law ought to be construed to avoid results of doubtful constitutionality). If the court were to recognize such a breach of fiduciary duty, it would be required to define a reasonable duty standard and to evaluate Rykse's conduct against that standard, an inquiry identical to that which Illinois has declined to undertake in the context of a clergy malpractice claim and one that is of doubtful validity under the Free Exercise Clause. It is clear that Illinois would not

---

10. Although the statute does not encompass religious counseling in "psychotherapy," the definition of "psychotherapist" in the statute is very broad:

> "Psychotherapist" means a physician, psychologist, nurse, chemical dependency counselor, social worker, or other person, whether or not licensed by the State, who performs or purports to perform psychotherapy.

740 ILCS 140/1(d).

11. This statute applies only to "causes of action arising on, or after, its Jan. 1, 1989, effective date." *See Corgan*, 158 Ill.Dec. at 489, 574 N.E.2d at 602. It therefore cannot apply to Mrs. Dausch's allegations prior to January 1, 1989.

entertain a claim for breach of fiduciary obligation under the circumstances alleged here.

I believe that the counts of the complaint, with the exception of those that allege a breach of fiduciary duty, state a cause of action and must be reinstated by the district court. As I did at the beginning of the analysis, however, I stress that this case comes to us on the pleading. My assessment of the case must be circumscribed by that procedural posture. I intimate no opinion with respect to the merits of the case.