McHugh, J.
Plaintiffs in these actions allege that, while they were children, they were sexually abused by John J. Geoghan, then a Roman Catholic priest. They seek to recover from Geoghan damages for consequences of his alleged abuse. The plaintiffs also have sued, however, the Most Rev. Thomas V. Daily, the Rev. Monsignor John J. Shannon and the Rev. Francis H. Delaney (“the Supervisory Defendants”) claiming that, at various times, they supervised Geoghan’s *418 activities and negligently allowed him to engage in his tortious conduct.[1] The allegations of the complaint brought by plaintiff, Paul Mendez, are illustrative:
38. At all relevant times to this action, the responsibilities of Defendant Most Rev. Daily [and] Defendant Rev. Delaney... (hereinafter referred to as the “Supervisory Defendants”) included the hiring, retention, and supervision of Defendant Father Geoghan.
39. At all relevant times to this action, the Supervisory Defendants knew or should have known that Defendant Father Geoghan would interact and was interacting with individuals, including minors, and more specifically, was interacting with the Plaintiff, who was then approximately between the ages of 10 and 14.
40. At all relevant times to this action, the Supervisory Defendants had a duty of care to properly hire, retain, and supervise individuals of good reputation and character who would be asked to interact with minors.
41. At all relevant times to this action, the Supervisory Defendants negligently breached said duty by hiring and retaining Defendant Father Geoghan, an individual whom the Supervisory Defendants knew or should have known, was of bad character and reputation and unable to properly interact with minors. The Supervisory Defendants improperly and inadequately supervised Defendant Father Geoghan.
42. At all relevant times to this action, the Supervisory Defendants knew or should have known that Defendant Father Geoghan’s intentional and negligent conduct would result in severe mental and emotional suffering by the Plaintiff.
43. As a direct and proximate result of the Supervisory Defendants’ negligent conduct, the plaintiff suffered and will continue to suffer [damages].
The Supervisory Defendants now have moved to dismiss Plaintiffs’ complaints. They claim that those complaints allege what amounts to a claim of clerical malpractice that never has been recognized in the Commonwealth of Massachusetts. Moreover, they claim that their supervisory responsibilities and their responsibilities for training and retention of Geoghan are derived from ecumenical principles, precepts and law and thus under the First Amendment to the Constitution of the United States[2] and under Art. II of the Declaration of Rights,[3] a civil court has no power to inquire into them.
Under both the state and federal constitutions, a civil court is prohibited from making religious decisions and from deciding which of several competing religious decisions is correct. Put another way, the provisions of the Constitutions “prohibit [] civil courts from intervening in disputes concerning religious doctrine, discipline, faith, or internal organization.” Alberts v. Devine, 395 Mass. 59, 72 (1985). As a consequence, “assessment of an individual’s qualifications to be a minister, and the appointment and retirement of ministers, are ecclesiastical matters entitled to constitutional protection against judicial or other State interference.” Id. at 72-73.
Those principles do not mean, however, that all consequences of the relationship between and among members of the clergy, particularly as those consequences effect third parties, are beyond judicial scrutiny. In property disputes, for example, notwithstanding the lack of judicial power to interpret religious doctrine, courts may apply “neutral principles” to religious doctrines such as church constitutions but, in doing so, “must take special care to scrutinize the document in purely secular terms.” Jones v. Wolf, 443 U.S. 595, 604 (1979). Likewise, the fact that religious doctrine justifies conduct does not always and necessarily immunize that conduct from .the sanctions of civil law. Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872 (1990); Alberts v. Devine, supra, 395 Mass. at 73. And, while civil courts are not prohibited from making appropriate civil determinations simply because the actors are clerics or the subject matter of the dispute has heavy religious overtones. “Although the freedom to believe ‘is absolute,’ the freedom to act ‘cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection.’ ” Alberts v. Devine, supra, 395 Mass. at 73, quoting Attorney General v. Bailey, 386 Mass. 367, 375 (1982).
The difficulty with present application of those principles flows from the level of abstraction at which both sides assert them. The Supervisory Defendants point to various principles of the Code of Canon Law dealing with such things as the formation of clerics, qualifications for pastors, responsibilities of pastors and selection of pastors and to commentary dealing with the various Canons as proof that further pursuit of plaintiffs’ claims will inevitably lead the court deep into the realm of religious doctrine. For their part, plaintiffs point to provisions of the Restatements of Torts and Agency dealing with the consequences of negligent supervision of employees or the selection of incompetent employees as proof that the issues this case presents are issues with which the courts are accustomed to dealing every day.
Disputes of this kind, however, cannot properly be resolved at that level of abstraction. While it is safe to say that there is no such thing as “clerical malpractice” in Massachusetts, or most other places, see, e.g., Dausch v. Rykse, 52 F.3d 1425, 1432 n.4 (7th Cir. 1994), it does not necessarily follow that, for example, a cleric would be wholly immune from liability if he or she stood idly by while a parishioner unknowingly walked into a place or position that the cleric knew *419 would expose that parishioner to great danger. While it is safe to say that there is no justifiable claim in Massachusetts for negligent clerical training, that does not necessarily mean that clerics are wholly immune from liability for directing, or permitting, a subordinate, pursuant to whatever power and authority, to do something or engage in some activity that they knew or should have known would expose third parties to grave and unseen danger.
The delicate balance between the freedom to exercise religion and the demands placed on all persons, clerical and others, to refrain from conduct with harmful potential to others requires the courts to avoid sweeping, categorical decisions and to proceed, in controversies like this one,[4] with precision in order to vindicate important state interests without undue impact on areas the constitutions reserve to the church. The precise nature of plaintiffs’ claims and the precise setting in which those claims are advanced have yet to be determined. The precise nature of Canon Law or the role Canon Law will be called upon to play in providing a defense to plaintiffs’ claims likewise has yet to be determined. Until that determination is made an appropriate and precise judgment about the extent to which Canon Law provides defendants with immunity cannot be determined. Mindful of the rule that “a plaintiff can withstand a motion to dismiss if he has alleged facts that entitle him to any form of relief, even if he has not alleged the correct legal theoiy in his complaint,” Independence Park, Inc. v. Board of Health of Barnstable, 403 Mass. 417, 482 (1988), and the rule that “[a] complaint should not be dismissed merely because it suggests a novel legal theory of recovery "Bell v. Mazza, 394 Mass. 174, 183 (1985), the Supervisory Defendants thus are not entitled at this stage to a judgment dismissing the claims against them.
ORDER
In light of the foregoing, it is hereby ORDERED that Defendants’ Motion to Dismiss the complaints should be, and it hereby is, DENIED.

 Different plaintiffs assign different supervisory roles to the Supervisory Defendants. All three are not alleged to have had a supervisory role in Geoghan’s alleged interactions with all plaintiffs.

 In pertinent part, the First Amendment provides that “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.”

 In pertinent part, Art. II of the Declaration of Rights of the Inhabitants of the Commonwealth of Massachusetts Constitution Part 1, Article II, provides that, "no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping GOD in the manner and season of most agreeable to the dictates of his own conscience; or for his religious profession or sentiments; provided he doth not disturb the public peace, or obstruct others in their religious worship."

 There are some situations where broad pron mncements are necessary to make the constitutional freedoms effective. See, e.g., In re Hodge, 220 B.R. 386 (D. Idaho 1998). This is not one of them.