**Mark and Larinda HAWKINS,**
**Appellants,**

**v.**

**TRINITY BAPTIST CHURCH, Tyler,**
**Texas, and Reverend Darrell**
**Wait, Appellees.**

No. 12–99–00438–CV.

Court of Appeals of Texas,
Tyler.

July 7, 2000.

Rehearing Overruled Sept. 6, 2000.

Mr. Mark M. Donheiser of Dallas, TX, for appellants.

Mr. James Shelby Sharpe of Fort Worth, TX, for appellees, Trinity Baptist.

Mr. Levi Glenn McCathern of Dallas, TX, for appellees, Reverend Wait.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

JIM WORTHEN, Justice.

Larinda and Mark Hawkins, ("Larinda" and "Mark"), appeal from a summary judgment entered in favor of Trinity Baptist Church, Tyler, Texas ("Trinity"), and Reverend Darrell Wait ("Wait"), in their suit under the Sexual Exploitation by Mental Health Services Provider Act[1] ("the Act"), for negligent hiring and retention and for breach of fiduciary duty. In eight issues, they contend that the trial court erred in granting summary judgment because the conduct of Wait was secular rather than religious, moral and spiritual, that Wait breached his fiduciary duty to them and that Trinity was vicariously liable for Wait's conduct during the counseling sessions. We will reverse and remand for further proceedings on Larinda's claim under the Act against Wait only and affirm the judgment on all other issues.

## FACTUAL BACKGROUND

The summary judgment evidence shows that in March 1993, Trinity hired Wait as its pastor. Wait had formerly served as pastor at two other churches prior to taking up the Trinity pastorate. In June of 1996, Trinity hired Larinda, who was a longtime member of Trinity, as church secretary. In January of 1997, Larinda informally began visiting with Wait about marital problems she was having with her husband, Mark. These informal sessions concerning her marital problems grew into regular sessions that took place on Monday, Tuesday and Thursday mornings of each week. As these sessions continued, Wait also began counseling Mark separately regarding the couple's problems.

In late April or early May of 1997, Trinity's youth and recreation minister, Kendall Banks, and music minister, Mickey Akin, confronted Wait about his continuing closed-door meetings with Larinda. They told him that they did not feel that it presented a good testimony for him to be spending so much time alone with Larinda and that it was unprofessional, and at worst, immature conduct. Wait assured Banks and Akin that there was nothing wrong with his conduct toward Larinda. At about the same time, Akin's wife, Anita, visited with Larinda and told her that the amount of time that she was spending alone with Wait was not a good testimony. Larinda informed Mrs. Akin that there was nothing wrong going on between her and Waits and that she was offended by this suggestion of improper behavior.

The summary judgment evidence shows that at the end of April or early May of 1997, Wait invited Larinda to come to his private residence while his wife was out of town. At this meeting, Wait told Larinda he did not understand the act of oral sex she described performing on her husband, Mark. He asked her to perform it on him so he would understand. She said she did

---

1. Tex Civ.Prac & Rem.Code Ann. §§ 81.001–81.009 (Vernon 1997). Although § 81.001 of this Act was amended in part in 1999, those amendments do not affect disposition of this case under the Act.

not like performing this act but acceded to Wait's request and performed it on him. On May 6, 1997, during a counseling session with Wait, Mark admitted that he had had an affair four or five years earlier. The next day, on May 7th, Wait informed Larinda about Mark's affair. On the evening of May 7th, Larinda confronted Mark at their home about the affair. Mark then moved out of their home. The next day, Larinda informed Wait that Mark had moved out, and thereafter, sometime around midday, Wait rode home with Larinda in her car to her house where they had sexual intercourse.

On May 10th, Mark returned home to Larinda, and she told him that she and Wait had had an affair. On May 12th, Mark and Larinda met with Wait in the living room of Wait's home about the affair between him and Larinda. Wait informed Mark that he wanted him to divorce Larinda because he loved her. This meeting among the three ended inconclusively. Later that afternoon, Wait called Larinda while she was working at the church and told her to meet him at the LaQuinta Motel. She met him there, and they again had sexual intercourse.

On June 11, 1997, at a youth camp, Mark informed Banks that Larinda had been involved in an inappropriate sexual relationship with Wait. Following this June revelation, Wait resigned from his position as pastor of Trinity.

### PROCEDURAL BACKGROUND

In August of 1998, Larinda and Mark filed suit against Wait and Trinity for violation of the Act. They further sued Wait for breach of fiduciary relationship and asserted that Trinity was vicariously liable for Wait's actions and had negligently hired and supervised him. Larinda and Mark filed a partial summary judgment based on the Act which was denied by the court. Wait filed a traditional motion for summary judgment under Texas Rule of

Civil Procedure 166a(c) asserting that he was exempt from liability under section 81.001((7) of the Act, exempt under the First Amendment to the United States Constitution, and Article I, Section 6 of the Texas Constitution, and that no fiduciary duty to Larinda and Mark existed. Trinity also filed a motion for summary judgment on both traditional and no evidence [2] summary judgment grounds asserting that it was not liable for Wait's conduct. Mark and Larinda responded to both motions. The court at first denied both Wait's and Trinity's motions. However, after Trinity filed a second motion for summary judgment upon both traditional and no evidence summary judgment grounds, the court granted both of Trinity's motions and Wait's motion as well. Larinda and Mark thereafter timely perfected this appeal.

### STANDARD OF REVIEW

 To obtain a standard summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Id.* Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of a plaintiff's cause of action as a matter of law or conclusively establishes all elements of an affirmative defense as a matter of law. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990). In a traditional summary judgment, once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the non-movant to produce controverting

---

2. TEX.R.CIV.P. 166a(i).

evidence raising a fact issue as to the elements negated. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

■ Under the no evidence summary judgment rule, the movant may move for summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. TEX. R.CIV.P. 166a(i). The motion must specify the elements for which there is no evidence. *Id.* The motion must be granted unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.*

■ A request for a "no evidence" summary judgment is, in effect, a request for a pretrial-directed verdict. *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We apply the same legal sufficiency standard in reviewing no evidence summary judgments as we apply in reviewing directed verdicts. *See id.* We review the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *See id.* If the respondent produces more than a scintilla of probative evidence to raise a genuine issue of material fact, a no evidence summary judgment is improper. *Id.* If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

### LARINDA'S CLAIMS AGAINST WAIT

In her issues one, two, three and five, Larinda contends that the trial court erred in granting summary judgment on all par-

ties because the marriage counseling given by Wait was secular, and therefore, he was liable under the Act. Section 81.001 and 81.002 of the Act provide:

### § 81.001. Definitions

(1) *"Mental health services"* means assessment, diagnosis, treatment or counseling in a professional relationship to assist an individual or group in:

(A) alleviating mental or emotional illness, symptoms, conditions, or disorders, including alcohol or drug addiction;

(B) understanding conscious or subconscious motivations;

(C) resolving emotional, attitudinal, or *relationship conflicts;* or

(D) modifying feelings, attitudes, or behaviors that interfere with effective emotional, social, or intellectual functioning.

(2) *"Mental health services provider"* means an individual, licensed or unlicensed, who performs or purports to perform mental health services, including a:

. . .

(E) *member of the clergy;*

. . .

(3) "Patient" means an individual who seeks or obtains mental health services.

(4) "Sexual contact" means:

(A) "deviate sexual intercourse" as defined by Section 21.01, Penal Code;

(B) "sexual contact" as defined by Section 21.01, Penal Code;

(C) "sexual intercourse" as defined by Section 21.01, Penal Code; or

(D) requests by the mental health services provider for conduct described by Paragraph (A), (B), or (C). "Sexual contact" does not include conduct described by Paragraph (A) or (B) that is part of a professionally recognized medical treatment of a patient.

(5) "Sexual exploitation" means a pattern, practice, or scheme of conduct,

which may include sexual contact, that can reasonably be construed as being for the purposes of sexual arousal or gratification or sexual abuse of any person. The term does not include obtaining information about a patient's sexual history within standard accepted practice while treating a sexual or marital dysfunction.

(6) "Therapeutic deception" means a representation by a mental health services provider that sexual contact with, or sexual exploitation by, the mental health services provider is consistent with, or a part of, a patient's or former patient's treatment.

(7) *"Mental health services," as defined by this section, provided by a member of the clergy does not include religious, moral, and spiritual counseling, teaching, and instruction.*

(emphasis ours).

TEX.CIV.PRAC. & REM.CODE § 81.001 (Vernon 1997).

### § 81.002. Sexual Exploitation Cause of Action

A mental health services provider is liable to a patient or former patient of the mental health services provider for damages for sexual exploitation if the patient or former patient suffers, directly or indirectly, a physical, mental, or emotional injury caused by, resulting from, or arising out of:

(1) sexual contact between the patient or former patient and the mental health services provider;

(2) sexual exploitation of the patient or former patient by the mental health services provider; or

(3) therapeutic deception of the patient or former patient by the mental health services provider.

TEX.CIV.PRAC. & REM.CODE § 81.002 (Vernon 1997).

■ Larinda contends that Wait is liable because the statute clearly places a "member of the clergy" within the definition of "mental health services provider." Wait counters that section 81.001(7) of the Act excludes him from liability for his conduct because he was providing "religious, moral, and spiritual counseling, teaching and instruction" to Larinda.[3]

It is clear in analyzing the statutes that the legislature's focus was on the conduct resulting in "sexual exploitation" by a "mental health services provider." TEX. CIV.PRAC. & REM.CODE § 81.002 (Vernon 1997). It is also apparent from the statute's language that a "member of the clergy" can be liable for his conduct in counseling a patient regarding a "relationship conflict." TEX.CIV.PRAC. & REM.CODE § 81.001(2)(E) (Vernon 1997). The summary judgment evidence shows that Wait's conduct toward Larinda during counseling sessions falls within the gamut of section 81.001(1). Because Wait was the movant on summary judgment, he had the burden of producing summary, judgment evidence showing that section 81.001(7) of the Act excluded his conduct from the application of section 81.001(1). TEX.R.CIV.P. 166a(c). This Wait failed to do. Because Wait's summary judgment evidence did not establish that his conduct constituted "religious, moral and spiritual counseling, teaching and instruction," Wait failed to establish that section 81.001((7) excludes him from liability under the Act in this case.

**3.** The American Heritage Dictionary, third edition, defines "religious" as: "(1) Having or showing belief in and reverence for God or a deity. (2) Of, concerned with, or teaching religion; ... (3) Extremely scrupulous or conscientious; ..." AMERICAN HERITAGE DICTIONARY 1525 (3rd ed.1996). "Moral" is defined as: "(1) Of or concerned with the judgment of the goodness or badness of human action and character ... (2) Teaching or exhibiting good-

ness or correctness of character and behavior ... (3) Conforming to standards of what is right or just in behavior; virtuous ..." AMERICAN HERITAGE DICTIONARY 1173 (3rd ed.1996). "Spiritual" is defined as "(1) Of, relating to, consisting of, or having the nature of spirit; not tangible or material ... (2) Of, concerned with, or affecting the soul; (3) Of, from, or relating to God, deific...." AMERICAN HERITAGE DICTIONARY 1738 (3rd ed.1996).

 Wait further argues that his actions during these counseling sessions with Larinda were protected by the First Amendment of the United States Constitution and Article I, Section 6 of the Texas Constitution, which afford broad protection to the free exercise of religion. The Texas Supreme Court in *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex.1996) noted that the interpretative commentary to the provision of the Texas Constitution protecting freedom of worship states:

> [T]he free exercise of religion does not go so far as to be inclusive of actions which are in violation of social duties or subversive of good order. Although freedom to believe may be said to be absolute, freedom of conduct is not and conduct even under religious guise remains subject to regulations for the protection of society.

*Id. citing* TEX. CONST. art. I, § 6, interp. commentary (Vernon 1984). Similarly, the First Amendment to the United States Constitution does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular component of these relationships. *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335–36 (5th Cir.1998). The First Amendment's respect for religious relationships does not require a minister's counseling relationship with a parishioner to be purely secular in order for a court to review the propriety of the conduct occurring within that relationship. *Sanders*, 134 F.3d at 336. Here, Wait has failed to show that his conduct toward Larinda, which meets the definition of sexual exploitation under section 81.001((5), was protected under either constitution, and we hold that it was not. However, while we have determined that Wait's sexual contact and exploitation of Larinda were not constitutionally protected, the issue of Wait's

verbal and written communications was not before the trial court on summary judgment, and we do not address it. Accordingly, the trial court erred in granting summary judgment to Wait on Larinda's cause of action under the Act, and Larinda's first, second, third and fifth issues as to the Act's applicability to Wait are sustained.

 In her eighth issue, Larinda contends that Wait breached his fiduciary relationship with her in the context of the pastor-member relationship.[4] A formal fiduciary duty arises out of relationships such as attorney-client, partnership, or trustee-beneficiary. *Tectonic Realty v. CNA Lloyd's of Texas*, 812 S.W.2d 647, 651 (Tex.App.—Dallas 1991, writ denied). A fiduciary relationship may also arise informally for moral, social, domestic or purely personal relationships if confidentiality, trust and reliance are present. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962). Larinda, however, has failed to cite any Texas authority establishing that Texas recognizes a fiduciary relationship between a pastor and member. In *Dausch v. Rykse*, 52 F.3d 1425 (7th Cir.1994), Judge Ripple, in his concurring and dissenting opinion, agrees with the court's decision to dismiss the cause of action for breach of fiduciary duty asserted against a church's pastor. In that case, the district court had determined that as a matter of law the church pastor did not have a fiduciary relationship with the member. Agreeing with this conclusion and the circuit court's decision to dismiss the cause of action, Judge Ripple stated that "given the constitutional difficulties that would be encountered if a cause of action for breach of fiduciary duty were permitted under these circumstances (pastor-member), [the court] ought to be particularly cautious ..." *Dausch*, 52 F.3d at 1438 (Ripple, J.

---

4. In their pleadings in the trial court, both Larinda and Mark allege a breach of fiduciary duty against Wait. In their brief on appeal, they now refer to this as a confidential relationship. Fiduciary duties arise in a confidential relationship. *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex.App.—Dallas 1990, writ denied). Therefore, we will treat this as a breach of fiduciary duty claim by both Larinda and Mark.

concurring and dissenting). The judge aptly explained the concern invoked by the creation of such a cause of action as follows:

> If the court were to recognize such a breach of fiduciary duty, it would be required to define a reasonable duty standard and to evaluate Ryske's [the pastor's] conduct against that standard, an inquiry identical to that which Illinois has declined to undertake in the context of a clergy malpractice claim and one that is of doubtful validity under the Free Exercise Clause.

*Id.* Like Illinois, Texas recognizes no cause of action for clergy malpractice. Given our concerns toward treading upon the Free Exercise Clause of the First Amendment, we decline to determine that the pastor-member relationship in this case established a fiduciary duty. Accordingly, the trial court did not err in granting summary judgment for Wait and Trinity on this asserted cause of action. Larinda's issue eight is overruled.

### MARK'S CLAIMS AGAINST WAIT

Mark's sole cause of action against Wait is for breach of fiduciary duty, and it too is contained in issue eight. Mark contends that Wait breached his fiduciary duty toward him when he revealed to Larinda that Mark had had an affair with another woman during their marriage. While Wait's revelation to Larinda was certainly reprehensible from a moral viewpoint, for the reasons stated above, we hold that Texas does not recognize a cause of action for breach of fiduciary duty in the pastor-member relationship. Issue eight is therefore overruled as to Mark's complaint as well.

### LARINDA AND MARK'S CLAIMS AGAINST TRINITY

In issues four, six and seven, Larinda and Mark contend that Wait was acting within the course and scope of his employment with Trinity while conducting marriage counseling. Because we have

determined that Wait is not liable for any causes of action or legal theories alleged by Larinda and Mark except under the Act, we need only determine whether Trinity is liable under section 81.003 of the Act which provides:

### § 81.003. Liability of Employer

(a) An employer of a mental health services provider is liable to a patient or former patient of the mental health services provider for damages if the patient or former patient is injured as described by Section 81.002 and the employer:

> (1) fails to make inquiries of an employer or former employer, whose name and address have been disclosed to the employer and who employed the mental health services provider as a mental health services provider within the five years before the date of disclosure, concerning the possible occurrence of sexual exploitation by the mental health services provider of patients or former patients of the mental health services provider; or

> (2) knows or has reason to know that the mental health services provider engaged in the sexual exploitation of the patient or former patient and the employer failed to:

>> (A) report the suspected sexual exploitation as required by Section 81.006; or

>> (B) take necessary action to prevent or stop the sexual exploitation by the mental health services provider.

(c) An employer or former employer is liable under this section only to the extent that the failure to take the action described by Subsection (a) or (b) was a proximate and actual cause of damages sustained.

(d) If a mental health professional who sexually exploits a patient or former patient is a member of the clergy and the sexual exploitation occurs when the professional is acting as a member of the clergy, liability if any under this section is limited to the church, congregation, or

parish in which the member of the clergy carried out the clergy member's pastoral duties:

> (1) at the time the sexual exploitation occurs, if the liability is based on a violation of Subsection (a); or
>
> (2) at the time of the previous occurrence of sexual exploitation, if the liability is based on a violation of Subsection (b).

. . .

Tex.Civ.Prac. & Rem.Code § 81.003(a)(c) and (d)(Vernon 1997).

We first determine whether Trinity employed Wait to provide mental health services, or if it had employed him for the purpose of "religious, moral and spiritual counseling, teaching and instruction." The summary judgment evidence showed that Wait had served as a church pastor of two churches prior to his becoming the pastor at Trinity. By deposition, Larinda testified that Trinity had a policy of referring couples needing marital counseling to Dr. Haygood, a licensed professional counselor. The church paid one-third of Dr. Haygood's fee while the referred couple would pay the remaining two-thirds. Steven Hurst, a member of Trinity since 1991 and chairman of the board of deacons since February 1995, stated in his affidavit that the church only authorized its pastor and staff members to provide counseling, teaching and instruction that was religious, moral and spiritual. Hurst's affidavit further stated that Trinity had never advertised that it provided mental health counseling services, and that no one had informed the board of deacons that anything other than religious, moral or spiritual training was being provided by Trinity. Further, neither Larinda nor Mark provided summary judgment evidence that Trinity had hired Wait in a capacity to provide counseling, instruction or teaching other than religious, moral and spiritual. A member of the clergy providing religious, moral and spiritual counseling, teaching and instruction is not part of the definition of "mental health services" as

provided in section 81.001 of the Act. There is no evidence in the record to show Trinity hired Wait for any purpose other than to provide religious, moral and spiritual counseling, teaching and instruction to its members. Thus, no duty to inquire of Wait's past sexual exploitation arose under section 81.003 of the Act.

Larinda and Mark, however, contend that Trinity is liable because it was aware that Wait was providing secular marriage counseling to them. The summary judgment evidence established that Trinity was governed by congregational rule. We find no evidence in the record to suggest that the congregation of Trinity knew or had reason to know that Wait was giving Larinda or Mark any counseling, teaching or instruction other than religious, moral and spiritual. In fact, there is no summary judgment evidence that anyone other than Wait knew that Mark and Larinda were having marital difficulties. As previously noted, the evidence merely established that Banks and the Akins felt compelled to speak to Wait and Larinda about their bad testimony demonstrated through their immature behavior. No summary judgment evidence shows that Trinity knew or should have known that Wait was engaging in sexual misconduct with Larinda. Consequently, we hold that the trial court did not err in granting summary judgment in favor of Trinity because there was no summary judgment evidence to establish that it was liable under section 81.003 of the Sexual Exploitation by Mental Health Services Provider Act. Larinda and Mark's issues four, six and seven are overruled.

### Conclusion

We *reverse* the trial court's judgment with respect to Larinda's claim against Wait under the Act and *remand* that claim to the trial court for further proceedings. In all other respects, the judgment of the trial court is *affirmed.*.