COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-02-260-CV
 
  
  
PEGGY 
LEE PENLEY                                                               APPELLANT
 
V.
 
C.L. 
WESTBROOK, JR.                                                              APPELLEE
  
  
------------
 
FROM 
THE 67TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Peggy Lee Penley, a former member of CrossLand Community Bible Church 
(“CCBC”), brought suit against CCBC, its pastor C.L. “Buddy” Westbrook, 
Jr., and three church elders after Westbrook published a letter to CCBC‘s 
congregation urging the church members to “break fellowship” with Penley 
because she was seeking a divorce without a “biblical basis” and had 
“engage[d] in a biblically inappropriate relationship with another man.”
        In 
her pleadings, Penley alleged five causes of action: defamation, breach of 
fiduciary duty, intentional infliction of emotional distress, invasion of 
privacy, and negligence. On CCBC’s and the four individual Defendants’ pleas 
to the jurisdiction and motions to dismiss, the trial court dismissed all of 
Penley’s claims for lack of subject matter jurisdiction on the basis that the 
First and Fourteenth Amendments to the United States Constitution shielded them 
from Penley’s suit. In three issues, Penley complains that (1) the trial court 
erred in dismissing her professional negligence claim against Westbrook because 
her pleadings showed that the trial court had subject matter jurisdiction over 
that claim; (2) if her pleadings did not set forth sufficient jurisdictional 
allegations, the trial court erred in dismissing her claim without allowing her 
an opportunity to amend her pleadings; and (3) the trial court abused its 
discretion by excluding Westbrook’s and Penley’s testimony at the hearing on 
the Defendants’ plea to the jurisdiction. We will affirm in part and reverse 
and remand in part.
I. Factual 
Background
        A. Formation of CCBC & Penley’s Membership
        CCBC 
is an unincorporated nonprofit association founded and organized in October 1999 
to exist and function as a “Christ-centered church” according to biblical 
principles and practices as described in CCBC’s statement of faith and 
constitution. CCBC’s leadership is comprised of “elders, deacons, pastors, 
ministers, and a treasurer.” When CCBC was formed in October 1999, Westbrook 
was selected to serve as the pastor of CCBC. Westbrook, Dr. John Young, Mike 
Thatcher, and Aaron Johnson serve as elders at CCBC. In addition to being 
CCBC’s pastor, Westbrook also holds himself out and works as a licensed 
professional counselor. Thus, over the same period Westbrook served as the 
pastor of CCBC, he also engaged in the practice of providing secular 
professional marriage and family counseling services to individuals facing 
marital difficulties.
        CCBC’s 
constitution, among other things, sets forth the church’s membership and 
disciplinary policies. According to CCBC’s constitution, an applicant for 
church membership must share his or her “willingness to abide by the 
constitution of the church” with the pastor, minister, or elder who interviews 
the applicant. Thus, CCBC’s constitution required applicants to abide by the 
following disciplinary policy:

We 
believe that one of the primary responsibilities of the church is to maintain 
the purity of the Body. We are directed by God to be holy. In recognition of 
this obligation, the elders will biblically and lovingly utilize every 
appropriate means to restore members who find themselves in patterns of serious 
misconduct. When efforts at restoration fail, the elders will apply the Biblical 
teaching on church discipline, which could include revocation of membership, 
along with an appropriate announcement made to the membership (Matt 18:15-17; I 
Cor 5:1-5; Gal 6:1, 2; 2 Thes 3:6).
 
No 
accusation shall be brought against any member except upon the testimony of two 
or three witnesses.

The 
constitution also provided that
[m]embership 
in this church will be terminated:
 
•Upon 
the request of a member who wishes to terminate his or her membership.
 
. 
. . .
 
•Upon 
the unanimous vote of the elders, relating to issues of a disciplinary 
procedure. When a member engages in a pattern of conduct which visibly violates 
Biblical standards, or which is detrimental to the ministry, unity, peace, or 
purity of the church, and such member remains unrepentant, the elders will 
follow our Lord’s instructions from Matthew 18:15-20. If the member remains 
unrepentant and chooses not to resign, such member will be removed from 
membership. This action will be announced to the congregation in a 
tenderhearted, discreet manner, followed by prayer, at the first appropriate 
Sunday service thereafter. The goal of such discipline will be to encourage 
repentance and restoration of fellowship with the Lord and His people.

        In 
October 1999, Penley became a member of CCBC. In a document titled “CrossLand 
Community Bible Church Questions for Membership,” Penley was asked to 
“[a]ffirm [her] willingness to abide by the constitution of this church (for 
example, with a ‘Yes, I willingly . . .‘ statement).” On June 6, 2000, 
Penley wrote, “Sure, I can abide by the church constitution . . . 
willingly.”
B. Marital Counseling, Penley’s Resignation, and 
Church Discipline
        In 
July 2000, Penley physically separated from her husband, Ben Stone, due to 
marital difficulties and discord. Penley alleged that, at various relevant 
times, Westbrook provided secular professional counseling services to her and to 
Stone because of their need for marital and family counseling. In her petition, 
Penley alleged that Westbrook “held himself out and represented that he was 
qualified by education, training, and experience to provide professional 
marriage and family counseling, as a professional marriage and family 
counselor.” Penley alleged that during various sessions with Westbrook, he 
“gained [her] trust and confidence” and “engaged in secular professional 
marriage and family counseling” services.
        The 
counseling services and efforts were unsuccessful, and Penley decided to seek a 
divorce from Stone. Around October 22, 2000, Penley told Westbrook of her 
decision concerning her marriage, and Westbrook counseled her and recommended a 
family law attorney with whom Penley could consult. According to Penley, 
“Westbrook [also] made other statements and representations to her.” Penley 
asserts that she responded by “positively and affirmatively terminat[ing] her 
membership in . . . CCBC by informing [Westbrook] of her resignation from the 
membership of CCBC.”
        Penley 
alleges that, despite her resignation from CCBC, Westbrook met with church 
elders Young, Thatcher, and Johnson to write a letter concerning her actions and 
responsive church discipline to be published to CCBC’s congregation. Westbrook 
and the elders later published a letter, dated November 7, 2000, to the members 
of CCBC. In the letter, Westbrook and the elders informed the congregation that 
Penley intended to divorce her husband, that there was no biblical basis for the 
divorce, and that she had engaged in a “biblically inappropriate” 
relationship with another man.
        The 
letter described Penley’s disciplinary process as one of “tough-love” and 
a “painful consequence that our Lord commands to ‘win’ [her], to bring 
[her] back to the Lord in a full sense and back to [her] family who deeply 
love[s] [her].” The letter also referenced the church disciplinary process by 
which all members are bound, discussed the church’s biblical basis for 
disciplining a wayward church member like Penley, and encouraged the church body 
“to shun” Penley for the purpose of obtaining her repentance and restoration 
to the church. The letter specifically admonished the membership to treat the 
matter as a “members-only issue, not to be shared with those outside our 
family” and “to not gossip or judge.” Penley and Stone eventually divorced 
on March 28, 2001.
II. Procedural 
History
        On 
November 6, 2001, Penley sued CCBC, Westbrook, Young, Thatcher, and Johnson, 
alleging causes of action for defamation, breach of fiduciary duty, and 
intentional infliction of emotional distress. Penley sought actual and exemplary 
damages for injuries she allegedly sustained as a result of the Defendants’ 
actions. Westbrook, the three elders, and CCBC filed general denials, special 
exceptions, pleas to the trial court’s jurisdiction, and motions to dismiss 
for lack of subject matter jurisdiction, asserting that the First Amendment as 
incorporated through the Fourteenth Amendment deprived the trial court of any 
jurisdiction to adjudicate what they characterized as an “ecclesiastical 
dispute concerning an intra-church disciplinary matter.” See U.S. Const. amends I, XIV.
        Penley 
attempted to conduct discovery on her claims by moving for discovery under a 
Level 3 discovery control plan and a scheduling order under rules 166 and 190.4 
of the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 166, 190.4. On February 
25, Penley filed notices of her intention to take the depositions of Westbrook, 
Young, Thatcher, and Johnson, individually and as representatives of CCBC. 
Penley also served subpoenas on the Defendants to testify at the hearing on the 
Defendants’ motions to dismiss for lack of subject matter jurisdiction. All of 
the Defendants filed motions to quash Penley’s subpoenas, to quash Penley’s 
deposition notices, and for protective orders pending a hearing on the trial 
court’s jurisdiction. Penley responded and filed a motion to compel the oral 
depositions of the Defendants.
        Thereafter, 
Penley amended her petition twice and added two more causes of action: invasion 
of privacy and negligence. In response, the Defendants filed several defensive 
pleadings, arguing, in part, that because Penley’s claims were ecclesiastical 
in nature, the trial court lacked subject matter jurisdiction over her suit. 
Westbrook did not file any special exceptions to Penley’s amended pleadings.[1]  On June 7, 2002, the trial conducted a hearing on 
the Defendants’ jurisdictional challenges.
        During 
the hearing, each side presented an opening statement. Penley next attempted to 
call Westbrook to testify, but he objected on the basis that, because the court 
was determining a question of jurisdiction as it related to the free exercise 
clause, Penley was not entitled to discovery or cross-examination of Westbrook. 
After considering arguments by each side, the court sustained Westbrook’s 
objection and refused to permit Penley to question Westbrook.  Penley then 
called elders Young, Thatcher, and Johnson to the stand, but the trial court 
sustained their objections, which were the same as Westbrook’s objection, and 
did not allow them to testify.  The trial court also rejected Penley’s 
attempt to call the four church leaders as representatives of CCBC.
        As 
Penley was about to take the stand to offer testimony, Westbrook objected and 
again argued that the trial court was constrained by the pleadings in 
determining the jurisdiction issue and could not receive her testimony. The 
trial court sustained Westbrook’s objection. Penley then asked the court to 
allow her to call Westbrook, Young, Thatcher, and Johnson to make a bill of 
exception, but the court sustained the Defendants’ objections and disallowed 
Penley from making a bill of exception.
        Penley 
sought to take the stand for the purpose of making a bill of exception with 
respect to her own testimony. The court allowed Penley to make a bill of 
exception, and Westbrook’s counsel also cross-examined her. Both sides 
presented further argument to the court concerning the Defendants’ 
jurisdictional challenges, and the trial court determined that it did not have 
jurisdiction over Penley’s claims. On June 24, 2002, the trial court signed an 
order of dismissal, which found that the court had no subject matter 
jurisdiction over the claims Penley asserted against CCBC, Westbrook, Young, 
Thatcher, and Johnson. In its order, the court also granted the Defendants’ 
motions to quash Penley’s deposition notices and subpoenas and protected the 
Defendants from discovery. The court then dismissed all of Penley’s claims 
against all of the named Defendants.
III. Scope of 
Appeal
        Penley 
appealed the trial court’s dismissal order as to all of the named Defendants, 
but on February 6, 2003, we granted Penley’s unopposed motion to dismiss 
Appellees CCBC, Young, Thatcher, and Johnson. See Penley v. CrossLand Cmty. 
Bible Church, No. 2-02-260-CV, 2003 WL 253369, at *1 (Tex. App.—Fort Worth 
Feb. 6, 2003, no pet.) (memo. op.).  Thus, this appeal only concerns the 
claims Penley asserted and now challenges with respect to Westbrook.
        In 
the trial court, Westbrook’s plea to the jurisdiction and motion to dismiss 
for lack of subject matter jurisdiction addressed Penley’s five causes of 
action against him.  The trial court granted Westbrook relief on all 
claims. Westbrook points out that, in this appeal, Penley has only argued and 
briefed that the trial court has subject matter jurisdiction over her 
professional negligence claim and that her original brief contains no argument 
concerning her defamation, breach of fiduciary duty, intentional infliction of 
emotional distress, and invasion of privacy causes of action.[2]  
Indeed, it is only in her reply brief that Penley attempts to challenge the 
dismissal of those four claims.
        A 
reply brief may not be used to raise new complaints. Tex. R. App. P. 38.3; In re M.D.H., 
No. 2-03-112-CV, 2004 WL 362224, at *3 (Tex. App.—Fort Worth Feb. 26, 2004, no 
pet.) (memo op. on reh’g); Barrios v. State, 27 S.W.3d 313, 321-22 
(Tex. App.—Houston [1st Dist.] 2000, pet. ref’d), cert. denied, 
534 U.S. 1024 (2001).  The Texas Rules of Appellate Procedure do not allow 
an appellant to include in a reply brief a new issue in response to some matter 
pointed out in the appellee’s briefs but not raised by the appellant’s 
original brief.  M.D.H., 2004 WL 362224, at *3; In re A.M., 
101 S.W.3d 480, 486 (Tex. App.—Corpus Christi 2002, pet. filed).  Thus, 
we agree with Westbrook that Penley has waived her complaints as to the 
dismissal of her four non-negligence causes of action.  See Tex. R. App. P. 38.1(h), 38.3; M.D.H., 
2004 WL 362224, at *3; Livecchi v. City of Grand Prairie, 109 S.W.3d 920, 
921-22 (Tex. App.—Dallas 2003, pet. filed); see also Turner v. Church of 
Jesus Christ of Latter-Day Saints, 18 S.W.3d 877, 896-97 (Tex. App.—Dallas 
2000, pet. denied) (holding that failure to challenge on appeal claims disposed 
of by summary judgment results in a waiver of appellate review of those claims), 
cert. denied, 533 U.S. 951 (2001).
IV. Issues on 
Appeal
        Penley 
complains in three issues that the trial court had subject matter jurisdiction 
over her professional negligence claim against Westbrook and therefore erred in 
dismissing that claim on the basis that it was barred by the First Amendment as 
applied to the States through the Fourteenth Amendment to the United States 
Constitution.[3]  In her first issue, Penley 
contends that the trial court erred in dismissing her professional negligence 
claim against Westbrook because her claim is one for professional negligence, as 
opposed to clergy malpractice, and she specifically alleged in her pleadings 
that Westbrook is a licensed professional counselor and that her claim arises 
from counseling that was secular in nature.  In her second issue, Penley 
alternatively argues that, if the trial court could not determine from her 
pleadings whether it had subject matter jurisdiction over her professional 
negligence claim against Westbrook, the court should not have dismissed that 
claim, but should have allowed her the opportunity to amend her pleadings.  
Finally, Penley asserts that the trial court abused its discretion by refusing 
to allow Westbrook’s and Penley’s testimony during the hearing on 
Westbrook’s motion to dismiss.
        A. Plea to Jurisdiction
        “Subject 
matter jurisdiction is never presumed and cannot be waived.”  Tex. 
Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 
1993).  The question of subject matter jurisdiction is a legal question, 
which we review de novo.  Mayhew v. Town of Sunnyvale, 964 S.W.2d 
922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144 (1999).  The 
absence of subject matter jurisdiction may be raised by a plea to the 
jurisdiction, as Westbrook has done in this case.  See Tex. Dep’t of 
Parks & Wildlife v. Miranda, No. 01-0619, 2004 WL 726901, at *11 (Tex. 
Apr. 2, 2004); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 
2000).  Further, a party may utilize a plea to the jurisdiction when 
religious liberty grounds form the basis for the jurisdictional challenge.  
See Green v. United Pentecostal Church Int’l, 899 S.W.2d 28, 30 (Tex. 
App.—Austin 1995, writ denied), cert. denied, 517 U.S. 1134 (1996); Patterson 
v. Southwestern Baptist Theological Seminary, 858 S.W.2d 602, 604-05 (Tex. 
App.—Fort Worth 1993, no pet.).
        A 
plea to the jurisdiction is a dilatory plea by which a party challenges a 
court’s authority to determine the subject matter of an action.  Bland, 
34 S.W.3d at 554.  The purpose of a dilatory plea is not to force the 
plaintiff to preview her case on the merits but to establish a reason why the 
merits should never be reached.  Id.  Thus, our task is not to 
decide the merits of Penley’s case but rather to examine the claims in her 
pleadings, taking as true the facts pled, to determine whether those facts 
support jurisdiction in the trial court.  See Osburn v. Denton County, 
124 S.W.3d 289, 292 (Tex. App.—Fort Worth 2003, pet. filed).
        “When 
a plea to the jurisdiction challenges the pleadings, we determine if the pleader 
has alleged facts that affirmatively demonstrate the court’s jurisdiction to 
hear the cause.”  Miranda, 2004 WL 726901, at *6; see also Tex. 
Natural Res. Conservation Comm’n v. White, 46 S.W.3d 864, 868 (Tex. 2001); 
Bland, 34 S.W.3d at 555.  We must construe the pleadings in the 
plaintiff’s favor and look to the pleader’s intent. Miranda, 2004 WL 
726901, at *6; County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 
2002); Peek v. Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989).  
“If the pleadings do not contain sufficient facts to affirmatively demonstrate 
the trial court[’]s jurisdiction but do not affirmatively demonstrate 
incurable defects in jurisdiction, the issue is one of pleading sufficiency and 
the plaintiffs should be afforded the opportunity to amend.”  Miranda, 
2004 WL 726901, at *6.  A trial court may grant a plea to the jurisdiction 
without allowing the pleader an opportunity to amend if the pleadings negate the 
existence of jurisdiction. Id.
        On 
the other hand, “if a plea to the jurisdiction challenges the existence of 
jurisdictional facts, we consider relevant evidence submitted by the parties 
when necessary to resolve the jurisdictional issues raised, as the trial court 
is required to do.”  Id. (citing Bland, 34 S.W.3d at 
555).  When the trial court is required to examine evidence to determine 
its subject matter jurisdiction, “the trial court exercises its discretion in 
deciding whether the jurisdictional determination should be made at a 
preliminary hearing or await a fuller development of the case, mindful that this 
determination must be made as soon as practicable.”  Id. (citing Bland, 
34 S.W.3d at 554).  In cases “in which the jurisdictional challenge 
implicates the merits of the plaintiffs’ cause of action and the plea to the 
jurisdiction includes evidence, the trial court reviews the relevant evidence to 
determine if a fact issue exists.”  Id.  Miranda 
concludes:

[if] 
the evidence creates a fact question regarding the jurisdictional issue, then 
the trial court cannot grant the plea to the jurisdiction, and the fact issue 
will be resolved by the fact finder. However, if the relevant evidence is 
undisputed or fails to raise a fact question on the jurisdictional issue, the 
trial court rules on the plea to the jurisdiction as a matter of law.

Id.
        B. Penley’s Pleadings
        In 
her first issue, Penley asserts that the trial court erred in dismissing her 
professional negligence claim against Westbrook.  Westbrook responds that 
the trial court properly dismissed Penley’s claim for lack of subject matter 
jurisdiction because the First Amendment prohibits judicial review of 
ecclesiastical disputes such as the religious disciplinary action made the basis 
of her claims.  By asserting that the trial court properly dismissed all of 
Penley’s claims because they were derived solely from the Defendants’ 
drafting and publication of the disciplinary letter, conduct that Westbrook 
contends was “clearly ecclesiastical in nature, regardless of the claims 
alleged,” Westbrook’s plea to the jurisdiction challenges Penley’s 
pleadings and not the existence of jurisdictional facts.  See id.
        Thus, 
under Miranda, we examine the substance and effect of Penley’s 
pleadings to determine whether she alleged sufficient facts that affirmatively 
demonstrate the court’s jurisdiction to hear her professional negligence claim 
against Westbrook.  See id. (citing Tex. Ass’n of Bus., 852 
S.W.2d at 446). Penley alleged in her second amended petition:
 
III. JURISDICTION AND VENUE

 
        . 
. . .
  
B. Jurisdiction 
Over Subject Matter. The Court has jurisdiction over the subject 
matter of the controversy in this case. Specifically, the Court has subject 
matter jurisdiction in this case because:
  
. 
. . .
 
a. “Defendant[] Westbrook . . . existed and 
functioned within the civil community, and, thus [is] amenable to the laws and 
rules governing property rights, torts, and criminal conduct. Thus, the 
Defendant[] . . . Westbrook . . . [is] subject to the Texas civil liability 
laws, including . . . negligence[] and other forms of torts or civil wrongs.
 
b. The subject matter of the Plaintiff 
Penley’s claims and causes of action for damages against the Defendant[] . . . 
Westbrook . . . is not strictly and purely “ecclesiastical” in nature and 
the Plaintiff Penley’s claims for damages against the Defendant[] . . . 
Westbrook . . . are neither outside the subject matter jurisdiction of the Court 
nor barred by the religion clauses of the First Amendment as incorporated in the 
Fourteenth Amendment to the United States Constitution.

                . 
. . .

IV. FACTUAL BACKGROUND
 
. 
. . .
 
        B. 
From October 1999 to November, 2000, the Defendant Westbrook was the 
Pastor of the CCBC. Over this same period of time, Defendant Westbrook was a 
professional counselor licensed in Texas and he engaged in the practice of 
providing secular professional marriage and family counseling services to and 
for various individuals, including counseling services to husbands and wives 
relating to marital difficulties or discord. At various relevant times hereto, 
Defendant Westbrook engaged in secular professional marriage and family 
counseling of Plaintiff Penley. Defendant Westbrook held himself out and 
represented that he was qualified by education, training, and experience to 
provide professional marriage and family counseling, as a professional marriage 
and family counselor, Westbrook entered into a counseling relationship with 
Penley, acquired influence, and gained Penley’s trust and confidence during 
his professional counseling relationship with her, and he expressed love and 
affection for her. As a result of these circumstances, the Defendant Westbrook 
is not entitled to assert any protection by the First Amendment to the United 
States Constitution for his conduct, statements, and representations in the 
course of providing secular counseling to and for Elizabeth Penley, and he was 
required to meet the reasonable and prudent standards of case [sic] applicable 
to any family or marital counselor under the same or similar circumstances.

. 
. . .
IX. COUNT 5 - NEGLIGENCE OF DEFENDANTS

                . 
. . .
 
B. Negligence of Defendant Westbrook. On the 
occasions in question in this case, Defendant Westbrook had a duty under Texas 
law to exercise ordinary care and act as a family counselor of reasonable and 
ordinary prudence under the same or similar circumstances in his family 
counseling services, advice, statements, and representations to and/or for Peggy 
Lee Penley. Defendant Westbrook breached that duty by committing one or more of 
the following acts or omissions of negligence, which was a proximate cause of 
the occurrence, injuries, and/or damages in question:
 
1.In that Westbrook negligently failed to 
provide proper counseling services, advice, statements, and representations to 
and for Peggy Penley;
 
2.In that Westbrook negligently failed to 
provide adequate counseling services, advice, statements, and representations to 
and for Peggy Lee Penley;
 
3.In that Westbrook negligently failed to 
provide safe counseling services, advice, statements, and representations to and 
for Peggy Lee Penley;
 
4.In that Westbrook negligently made 
misrepresentations and statements to and about Peggy Lee Penley;
 
5.In that Westbrook negligently engaged in 
other inappropriate conduct and comments with his counseling services, advice, 
statements, and representations to, for, and about Peggy Lee Penley.

        We 
agree with Penley that her pleadings, as quoted above, set forth sufficient 
factual allegations to support her professional negligence claim against 
Westbrook and do not otherwise affirmatively demonstrate incurable defects 
concerning the trial court’s jurisdiction.  See id.  In his 
brief, Westbrook argues that the trial court properly determined that it lacked 
subject matter jurisdiction over all of Penley’s claims, including her claim 
of professional negligence against him.  This argument is built on the 
faulty foundation that all of Penley’s claims stem from a single religious 
act, that being the publication of the November 2002 disciplinary letter as part 
of CCBC’s membership policy.  See, e.g., Dean v. Alford, 
994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.) (“[T]he First 
Amendment prohibits civil courts from intruding into the church’s governance 
of ‘religious’ or ‘ecclesiastical’ matters, such as theological 
controversy, church discipline, ecclesiastical government, or the conformity of 
members to standards of morality.”) (citing Serbian E. Orthodox Diocese v. 
Milivojevich, 426 U.S. 696, 708-09, 724-25, 96 S. Ct. 2372, 2380, 2387-88 
(1976)).
        “The 
Free Exercise Clause never has immunized clergy or churches from all causes of 
action alleging tortious conduct,” and it “do[es] not necessarily bar all 
claims which may touch on religious conduct.”  Tilton v. Marshall, 
925 S.W.2d 672, 677 (Tex. 1996) (citations omitted); In re Pleasant Glade 
Assembly of God, 991 S.W.2d 85, 89 (Tex. App.—Fort Worth 1998, orig. 
proceeding); see also Cantwell, 310 U.S. at 303-04, 60 S. Ct. at 
903 (stating that while the freedom to believe is absolute, the freedom to act 
“remains subject to regulation for the protection of society”).  We 
disagree with Westbrook’s argument on appeal because it focuses solely on the 
letter and the disciplinary process of the church; whereas, Penley’s second 
amended petition alleges facts and conduct independent of CCBC’s disciplinary 
process, which if taken as true, support Penley’s complaints that Westbrook 
was negligent in providing her secular professional counseling.  See 
Miranda, 2004 WL 726901, at *6; Tex. Ass’n of Bus., 852 S.W.2d at 
446; see, e.g., Tilton, 925 S.W.2d at 679 (grouping plaintiffs’ 
fraud claims against minister into two categories and stating that fraud claims 
arising from alleged promises to perform particular acts, which are matters 
other than faith or experience, did not “infringe upon [the minister’s] 
constitutional rights” and thus may be actionable) (plurality op.); Hawkins 
v. Trinity Baptist Church, 30 S.W.3d 446, 452 (Tex. App.—Tyler 2000, no 
pet.) (noting that Texas does not recognize cause of action for “clergy 
malpractice” but that the First Amendment does not extend to insulate 
“secular component[s]” of otherwise religious relationships) (citation 
omitted); Sanders v. Casa View Baptist Church, 134 F.3d 331, 337-38 (5th 
Cir.) (allowing plaintiff’s claims for professional negligence against 
minister acting as secular counselor), cert. denied, Baucum v. Sanders, 
525 U.S. 868 (1998); Dausch v. Rykse, 52 F.3d 1425, 1435 (7th Cir. 1994) 
(Ripple, J., concurring and dissenting) (permitting plaintiff’s professional 
negligence claim against minister for conduct as secular counselor); Odenthal 
v. Minn. Conference of Seventh-Day Adventists, 649 N.W.2d 426, 441 (Minn. 
2002) (holding trial court had jurisdiction to adjudicate church member’s 
negligent secular counseling claim against church minister); Barnes v. Outlaw, 
937 P.2d 323, 327-28 (Ariz. Ct. App. 1996) (allowing claim for counseling 
malpractice against church pastor), vacated in part on other grounds, 964 
P.2d 484 (Ariz. 1998).
        We 
conclude that Penley pled a viable claim involving Westbrook’s alleged breach 
of duty in his secular counseling role that does not implicate the propriety of 
CCBC’s disciplinary action.  Thus, Penley’s professional negligence 
claim against Westbrook does not require a judicial review of such issues as the 
decision to discipline her, whether Westbrook followed the church constitution 
in disciplining her, or how to properly interpret the statement that she 
“engage[d] in a biblically inappropriate relationship with another 
man.”  Instead, as Penley suggests in her brief, a fact finder will 
resolve such issues as whether Westbrook obtained confidential information from 
Penley while in the context of a secular counseling relationship and whether, 
without obtaining proper consent, he disclosed such information to outside 
parties.
        Westbrook 
argues that Penley raises a “new” professional negligence claim on appeal 
because her brief references regulatory and statutory duties of confidentiality 
imposed on licensed professional counselors in Texas not alleged in her 
pleadings.  We disagree with Westbroook’s characterization of Penley’s 
argument on appeal as raising a “new” professional negligence claim.
        Texas 
follows a “fair notice” pleading standard, which looks to whether the 
opposing party can ascertain from the pleading the nature and basic issues of 
the controversy and what testimony will be relevant at trial.  See 
Miranda, 2004 WL 726901, at *9-10 (plurality op.); Horizon/CMS Healthcare 
Corp. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000).  “A petition is 
sufficient if it gives fair and adequate notice of the facts upon which the 
pleader bases his claim.”  Auld, 34 S.W.3d at 897 (quoting Roark 
v. Allen, 633 S.W.2d 804, 810 (Tex. 1982)); see Tex. R. Civ. P. 47 (providing that a 
pleading setting forth a claim for relief must contain a short statement of the 
cause of action sufficient to give fair notice of the claim involved, a 
statement that the damages sought are within the jurisdictional limits of the 
court, and a demand for judgment).  A court should uphold the petition as 
to a cause of action that may be reasonably inferred from what is specifically 
stated, even if an element of the cause of action is not specifically alleged. Boyles 
v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993).
        Here, 
Penley pled that Westbrook held himself out as a licensed professional 
counselor,[4] engaged in secular counseling with 
Penley, and was bound by reasonable and prudent standards of care applicable to 
licensed counselors in Texas.  We hold that, in the context of Penley’s 
professional negligence claim, the allegations in Penley’s second amended 
petition were broad enough to encompass Penley’s claim that Westbrook’s 
secular counseling to her fell below the standards of care set forth in the 
TLPCA and other governing administrative regulations.  See Tex. Occ. Code. Ann. § 503.001 et seq. 
(Vernon 2004); 22 Tex. Admin. Code. 
§ 681 (2004) (governing professional counselors).
        Westbrook 
also argues that to the extent the regulations and statutes applicable to 
licenced professional counselors apply to Westbrook in his “pastoral 
capacity,” they impose an impermissible and unconstitutional burden on his 
First Amendment rights.  This argument fails because Penley is not arguing 
that Westbrook committed clergy malpractice or that he was otherwise negligent 
while providing pastoral counseling.  See generally Hawkins, 
30 S.W.3d at 453; see also Tex. 
Occ. Code Ann. § 503.054(2).  Rather, Penley alleges that Westbrook 
provided negligent secular counseling to and for Penley and that his 
counseling services fell below the reasonable and prudent standards of care 
applicable to any licensed professional counselor under the same or similar 
circumstances.
        On 
the record before us, based on Penley’s allegations that are not disputed by 
Westbrook, Westbrook functioned in three capacities at various relevant times in 
his relationship with Penley.  See generally Destefano v. Gabrian, 
763 P.2d 275, 285 n.10 (Colo. 1988) (citing four articles that discuss the 
interrelation between clergy and secular counseling).  Penley stated that 
Westbrook was her friend, her pastor, and her professional 
counselor.  Penley’s professional negligence claim is not based on the 
first two roles, but rather on the third.  We therefore reject 
Westbrook’s argument that the regulations and statutes applicable to licenced 
professional counselors impose an impermissible and unconstitutional burden on 
his First Amendment rights as they apply to him in his “pastoral capacity” 
because Penley’s professional negligence claim concerns Westbrook in his role 
as Penley’s secular professional counselor.[5]
        Upon 
our examination of Penley’s pleadings, taking as true the factual allegations 
pled, but without deciding the merits of her case, we conclude that the trial 
court erred in concluding that it lacked subject matter jurisdiction over 
Penley’s professional negligence claim against Westbrook.  See Miranda, 
2004 WL 726901, at *6; Osburn, 124 S.W.3d at 292.  Accordingly, we 
sustain Penley’s first issue.[6]
VI. Conclusion
        Having 
sustained Penley’s first issue, we reverse the trial court’s dismissal for 
want of subject matter jurisdiction with respect only to her professional 
negligence claim against Westbrook and remand that claim for a trial on the 
merits.  We affirm the trial court’s dismissal in all other respects.

  
  
                                                          ANNE 
GARDNER
                                                          JUSTICE
  
 
PANEL 
B:   DAUPHINOT, GARDNER, and WALKER, JJ.
 
DELIVERED: 
May 20, 2004


NOTES
1.  
CCBC, Young, Thatcher, and Johnson, in their first amended original answer, 
included a plea to the jurisdiction and special exceptions to Penley’s first 
amended petition. The trial court, however, never ruled on these Defendants’ 
special exceptions.
2.  
For example, Penley characterizes her suit as a “professional negligence 
action” in her summary of the argument. After a section concerning the scope 
and standard of review, Penley’s brief contains the following heading: The 
First Amendment does not insulate Westbrook from Penley’s claims for 
professional negligence.”  Moreover, at the end of that section, Penley 
urges us to “reverse the dismissal and remand Penley’s negligence claims 
against Westbrook for trial.”
3.  
The First Amendment to the United States Constitution, applied to the States 
through the Fourteenth Amendment, states, “Congress shall make no law 
respecting an establishment of religion, or prohibiting the free exercise 
thereof.”  U.S. Const. 
amends. I, XIV; see Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S. Ct. 
900, 903 (1940).  Because Westbrook did not assert a religious liberty 
defense under article I, section 6 of the Texas Constitution, we only address 
Penley’s issues under the federal constitutional guaranties.  See U.S. Const. amends. I, XIV; Tex. Const. art. I, § 6.
4.  
According to the Texas Licensed Professional Counselor Act (TLPCA), a

“[l]icensed 
professional counselor” means a person who holds a license issued under this 
chapter and who:
(A) 
represents the person to the public by any title or description of services 
incorporating the words “licensed counselor” and offers to provide 
professional counseling services to any individual, couple, family, group, or 
other entity for compensation, implying that the person offering the services is 
licensed and trained, experienced, or expert in counseling; or
(B) 
engages in any practice of counseling.

Tex. Occ. Code Ann. § 503.002(4) 
(Vernon 2004).  Further, the TLPCA provides for counseling by religious 
practitioners as follows:

This 
chapter does not apply to an activity or service of any of the following 
persons performing counseling consistent with the law of this state, the 
person’s training, and any code of ethics of the person’s profession if 
the person does not represent the person by any title or description as 
described by the definition of “licensed professional counselor” in 
Section 503.002 . . . a recognized religious practitioner, including a Christian 
Science practitioner recognized by the Church of Christ Scientist as registered 
and published in the Christian Science Journal.

Id. 
§ 503.054(2) (emphases supplied).
5.  
As Judge Ripple observes in Dausch, “[f]ew would doubt . . . that a 
lawyer practicing in a legal clinic operated by a church or a physician 
practicing in a clinic under church auspices would have to comply with the same 
standards of professional care and responsibility as any other law firm or 
medical facility.” 52 F.3d at 1425 (Ripple, J., concurring and dissenting).
6.  
In light of our disposition on Penley’s first issue, it is unnecessary to 
address the remainder of Penley’s issues. See Tex. R. App. P. 47.1 (stating opinion 
need only address every issue necessary to final disposition of the appeal).